C. H. McCormick et al.

*vs.*

*Edwin S. Fitch.

</div>

The sufficiency of certain evidence to sustain the finding of the Court considered and determined.

Personal property consigned to a person in this State, for sale by a resident of another State, and not for the sole purpose of being stored or forwarded, in the possession of such consignee is taxable.

The " county purposes " mentioned in *Sec.* 2, *Ch.* 6, *of the Laws of* 1861, for which the maximum annual tax is limited in the counties therein specified, to three mills on the dollar without a vote of the people, includes only the ordinary expenses of the county. The payment of the county debt, or the interest thereon, is not within these ordinary expenses; nor is the expenditure of an amount not exceeding one thousand dollars for extraordinary purposes, authorized by the act. The amounts necessary to be raised for these latter purposes are not included within the three mills limited by that act. The necessary amount of tax to meet

*This case was argued and determined at the July term, 1868.—REPORTER.

these purposes may be levied by the commissioners under the general power contained in the first clause of section 2 of the act cited.

Any amount not exceeding one thousand dollars in any one year, may be appropriated by the commissioners of the county for roads and bridges under the act of March 1, 1862; and the amount so appropriated shall be considered as part of the one thousand dollars by law allowed to be expended for extraordinary purposes; a tax may be levied to raise a sum not exceeding one thousand dollars for this purpose, exclusive of the three mills, without a vote of the people. The levy of a poor tax and school tax is specifically authorized by law, and is not embraced within the three mills limited by the act referred to.

The power of the City of Hastings and the county of Dakota respectively to issue certain bonds for war bounties, &c., and to levy taxes to pay bonds issued for war bounties, &c., considered and determined.

The entire absence of evidence to prove the existence of a tax against a plaintiff determined.

*Section* 30 *of Ch.* 1 *of the Laws of* 1860 is in conflict with *sections* 1 *and* 3 *of Art.* 9 *of the Constitution*, and is void.

Where incompetent evidence of a fact is offered and received without objection, the party who should have objected to its acceptance waives the objection by omitting to do so.

The acts of officers *de facto* are valid as to the public or third persons.

The sufficiency of an appointment of a deputy treasurer to authorize such deputy to collect the personal delinquent taxes determined.

The requiring of a bond from a deputy treasurer under *Sec.* 9 *of Ch.* 3 *of the Laws of* 1860, is solely for the security of the treasurer, aed may be dispensed with by him.

If in the written appointment of a deputy treasurer a bond was required, and no proof was given of the execution of such bond, yet as it distinctly appears that the treasurer who made the appointment subsequently recognized the person mentioned in the appointment as his deputy, and delivered to him the list of delinquent personal taxes for collection, it will be a waiver of the bond by the treasurer.

This action was brought in the District Court for Dakota county, and was tried therein by the Court, without a jury, and resulted in a judgment in favor of the defendant. The plaintiffs appeal to this Court.

The case is fully stated in the opinion of the Court.

CLAGETT & CROSBY and SEAGRAVE SMITH for Appellants.

SMITH & GILMAN, and JUDSON & HUDDLESTON for Respondent.

*By the Court.*—McMILLAN, J.—This action is brought by the plaintiffs to recover damages for the alleged wrongful taking of certain personal property. The defendant justifies the taking, as collector of taxes.

It appears from the finding of the court, that at the times the property was listed, and the taxes assessed, the plaintiffs were not residents of this State, but resided at Chicago, in the State of Illinois. The Court also finds, among other things, " That at the time of listing by Etheridge, in 1864, the plaintiffs had property in Hastings, subject to taxation, consisting of machinery, manufactured at the city of Chicago, Illinois, and sent to Hastings, for sale, at that time. Rhodes, the agent of plaintiffs, was called on in 1865, to list the property of plaintiffs, in said city of Hastings. They had personal property in said city of Hastings, of the description aforesaid, and manufactured and sent as above stated, and that the proceeds of sale made by their agents at Hastings, were forwarded to the plaintiffs, at Chicago, Illinois, and that they were not re-invested in the State of Minnesota, and that the property of plaintiffs, listed and taxed in Hastings, for the respective years 1864 and 1865, had been listed and taxed in Chicago, Illinois, for each year, before sent to Hastings, and the taxes afterwards paid in Chicago, and that the greater part of the machinery sent to Hastings, was ordered by plaintiffs' agent, after having contracted to sell the same to farmers, and that machinery was sent to agents, and payments to be received by them before delivery, and that there was some machinery at Hastings,

belonging to plaintiffs, when assessors called on agent for list of property, both in 1864 and 1865, which was not contracted for sale by them at the time."

We think there is sufficient evidence in this case to sustain the finding of the court, and that upon this state of facts, the property, under our law, was taxable.

It is provided by *Sec. 1, of Ch. 1, Laws of* 1860, " That all property whether real or personal, in this State, all mo-, neys, credits, investments in bonds, stocks, joint stock companies, or otherwise, of persons residing herein ; the property of corporations now existing or hereafter created, and the property of all banks or banking companies, now existing or hereafter created, and of all bankers, except such as are hereafter expressly exempted, shall be subject to taxation; and such property, moneys, credits, investments in bonds, joint stock companies or otherwise, or the value thereof, shall be entered in the list of taxable property, for that purpose, in the manner prescribed by this act." *Section* 11 of the same act is as follows : "Every person that shall own or have in his possession or subject to his control, any personal property within this State, with authority to sell the same, which shall have been purchased either in or out of this State, with a view to being sold at an advanced price, or profit, or which shall have been consigned to him from any place out of this State, for the purpose of being sold at any place within this State, shall be held to be a merchant; and, when he shall be by this act required to make out and deliver to the assessor a statement of his other personal property, he shall state the value of such property appertaining to his business as a merchant ; and in estimating the value thereof, he shall take as a criterion the average value of all such articles of personal property which he shall have had from time to time in his possession, or under his control,

during the year next previous to the time of making such statement, if so long he shall have been engaged in business; and if not, then during such time as he shall have been so engaged; and the average shall be made up by taking the amount in value on hand, as nearly as may be in each month of the next preceding year in which the person making such statement shall have been engaged in business, adding together such amounts, and dividing the aggregate amount thereof by the number of months that the person making the statement may have been in business during the preceding year; *Provided*, That no consignee shall be required to list for taxation the value of any property, the product of this State, nor the value of any property consigned to him from any other place for the sole purpose of being stored or forwarded; *Provided*, He shall in either case have no interest in such property, or any profit to be derived from its sale; and the word 'person,' as used in this and the succeeding sections, shall be held to mean and include firm, company, and incorporation."

It would seem very evident, that under these sections, that portion of the plaintiffs' property which was sent to their agents in this State for sale, and not merely for the purpose of being stored, or forwarded, was liable to taxation.

It appears that the board of commissioners levied the following taxes for the year 1864: For ordinary county expenses 3 mills on the dollar; for the support of the poor 3 mills; for maintaining common schools 2 mills; for the payment of outstanding interest bearing county orders other than poor orders ½ mill; for principal and interest on county bonds 4 mills; for repairing county roads and bridges 1 mill. And for the year 1865, the following taxes were levied: County tax, 3 mills; poor tax, 3 mills; to redeem in-

McCormick et al. v. Fitch.

terest bearing orders, 3 mills; road and bridge fund, ½ mill; general school fund, 2 mills.

It is urged by the appellants, that the commissioners were prohibited from levying a tax exceeding three mills on the dollar of the taxable property of the county for county purposes, unless first authorized to do so by a vote of the people. To support this position the appellants rely upon *Sec. 2, Ch. 6, of the Laws of* 1861, *Sess. Laws,* 1861, *p.* 47.

This section is amendatory of *Sec. 22 of Art.* 2, *Ch.* 15, *of the Laws of* 1860. An inspection of the two acts clearly shows that the intention of the Act of 1861, was to dispense with certain restrictions imposed by the Act of 1860, and to enlarge the power of county commissioners. We think the "county purposes" mentioned in this Act of 1861, for which the maximum tax is limited in the counties therein specified, to three mills on the dollar, without a vote of the people, includes only the ordinary expenses of the county. The payment of the county debt, or the interest thereon, is not within these ordinary expenses; nor is the expenditure of an amount not exceeding one thousand dollars for extraordinary purposes, authorized by the act; the amounts necessary to be raised for these latter purposes, therefore, are not included within the three mills limited by that act, but the necessary amount of tax to meet these purposes may be levied by the commissioners, under the general power contained in the first clause of this section.

At the time of the passage of the Act of 1861, and the Act of which it is amendatory, there was special provision made for the collection of taxes for roads and bridges by the several townships. *Sess. Laws* 1860, *Ch.* 4, *Art.* 1, *Sec.* 8. By the Act of March 1st, 1862, giving to the county commissioners a general supervision of county roads, and authorizing them to expend an amount not exceeding one

thousand dollars, it is provided, that any money appropriated by the commissioners under the act, shall be considered as part of the one thousand dollars by law allowed to be expended for extraordinary purposes; for this amount, therefore, a tax may be levied beyond the three mills. There is nothing in this case to show that the amount of road tax levied is not within the provisions of the law. The levy of a poor tax is specifically authorized by a law subsequent to the Act of 1861. *Laws* 1864, *Ch.* 16, *Sec.* 18, *p.* 57. The school tax is a district, and not a county tax, and is specifically authorized by *Ch.* 11 *of the Laws of* 1861, *Secs.* 37–9.

By *Sec.* 77 *of Ch.* 1 *of Laws of* 1860, *p.* 41, if any county has a floating debt in county orders, and the amount authorized by the existing laws, to be levied for county purposes, is insufficient to defray the expenses of said county and pay the interest on their debt, the commissioners may levy a sufficient amount to pay the interest on their debt, which tax, when collected, shall be applied to paying the interest on the county debt, and no other purpose.

By *Ch.* 27, *of the Special Laws of* 1862, express authority is conferred upon the county of Dakota to issue bonds, &c., and to include in the general tax an amount sufficient to pay the interest on such bonds as may be issued; and when any principal is about to become due, a sufficient amount to pay such principal. *Sess. Laws* 1862, *p.* 264. And at the extra session of 1862, the Legislature passed an act legalizing the action of the board of commissioners of the county of Dakota in issuing bonds for the payment of bounties to volunteers, and to provide for the levy of taxes to meet the interest and principal on the same. *Extra Sess. Laws* 1862, *p.* 70. *Special Laws, Ch.* 2.

It appears that there was included in the tax sales of

McCormick et al. v. Fitch.

1864, and 1865, respectively, a war bounty tax levied by the city of Hastings. The appellants object that the city of Hastings was not authorized to pay war bounties, and the tax for that purpose was illegal and void. By *Ch.* 11, *Gen. Laws* 1864, which is an Act amending *Sec.* 1 *of Ch.* 8 *of the Extra Session Laws of the year* 1862, it is provided, that the action of the county commissioners of any county or of any city council, or of the board of supervisors of any town in this State, in appropriating money, *issuing bonds*, orders, scrip, or other evidence of indebtedness to pay bounties to soldiers, or to support the families of soldiers, or which may hereafter be appropriated or issued by the authorities hereinbefore mentioned, pursuant to such action heretofore had, &c., and any tax which has been or *may be* levied by any of the authorities specified in this Act, for the payment of the principal and interest, or either, of such bonds, orders, scrip, or other evidence of indebtedness be, and the same is hereby legalized and made valid, and the payment of the principal and interest thereof, and the levy of such tax shall be binding on such county, city, or town, the same as if such action had been authorized by law, and such tax shall be collected in the same manner as other county, city, or town taxes are now collected. *Laws* 1864, *p.* 37.

But further; *ch.* 40 *of Special Laws,* 1865, expressly authorizes the city council of the city of Hastings to appropriate money to pay bounties to volunteers, and to issue the bonds of the city for the payment of such bounties, and to levy a special tax for the payment of such bonds, &c. ; and by *section* 4, the acts of the city council of said city of Hastings, in issuing bonds heretofore, for the purpose of raising bounties to fill the quotas, under former calls, by the President of the United States for men, are legalized ; and by *ch.* 9 of the *Special Laws of* 1863, the city of Hastings

is authorized to issue bonds for the purpose of reducing and funding her indebtedness, provided a majority of her legal voters so decide, and authority is given to levy a tax to pay the interest and principal, &c. *Laws* 1863 ; *Special Laws*, *chap.* 9, *p.* 192.

In view of the existence of the powers conferred and validated by these acts, to issue bonds of the character mentioned, and levy taxes to pay the same, and as the taxes levied appear to be for the payment of bonds within the terms of these acts, it will, in a case of this kind, be presumed that the bonds for which the tax is levied, are valid.

But it was stipulated and agreed between the attorneys of the respective parties, upon the trial, in open court, that all the allegations in the amended answer of the defendant, should be considered as denied ; and it expressly appears that the paper book " contains all the testimony offered in the case."

From a careful and repeated perusal of the paper book, the only evidence we are able to discover, relating in any way to a tax against the plaintiffs for either 1864 or 1865, is the original return of the assessor of Hastings for 1864, and the statement of Charles Etheridge, as agent of the plaintiffs, listing the property, and the return of the assessor of Hastings for 1865, stating the total value of plaintiffs' personal property at $1,000 ; and an entry is therein made in a column opposite their names, " refused to list," and $500 penalty added, and the total amount carried out in the auditor's column at $1,400.

The witness, L. Smith, who states that he was county auditor in 1864 and 1866, states also : " I delivered the list of personal tax to the treasurer to collect." Michael Comer, who states that he is treasurer of Dakota county, and has been such since March 1, 1862, says, " I delivered to Mr.

McCormick et al v. Fitch.

Fitch, June 18, 1866, a list of the delinquent personal taxes of Dakota county ;" and John Rhodes, a witness for the plaintiffs, says on his cross-examination : " The defendant Fitch, demanded of me the payment of the tax, for the years 1864 and 1865, and I refused to pay them.   I was not the plaintiffs' agent for the purpose of paying their taxes." There is nothing whatever in this testimony tending to show that the county auditor ever determined the sum to be levied upon the personal property of the plaintiffs, as listed or assessed for either of the years 1864, 1865 ; or that any tax for either year upon this property was extended upon a tax duplicate, or charged against the plaintiffs ; or that the list delivered by Smith, the county auditor, to the treasurer, contained any tax against the plaintiffs ; nor is there any evidence which shows that there was any tax upon personal property of the plaintiffs, delinquent for any year, or that any such tax was contained in the delinquent list delivered by the treasurer to the defendant.

The determination by the proper authorities of the purposes for which taxes shall be raised for a given period, and fixing the rate of taxation, or specifying the aggregate amount of money to be raised therefor, is a levy of the tax upon the district;  but the tax thus levied upon the district, must be assessed by the county auditor equally on all real and personal property subject to said taxes, and he must determine the sums to be levied upon each tract or lot of real property, and upon the amount of personal property listed in the name of each person in such district, and extend or set down such amount on the tax duplicate.   *Sess. Laws* 1860, *p.* 32, *Secs.* 42–3.   Until this is done there is no specific tax in existence.   There is no evidence, therefore, to sustain the finding of the Court as to the existence of the alleged tax for either of these years, either delinquent or

otherwise, and as this is vital to defendant's case, the finding must be reversed.

There are other objections urged by the appellants, which it is perhaps necessary or proper that we should here determine. Upon the refusal of the plaintiffs' agent to list his property for the taxes of 1865, the assessor returned the valuation of the same at $1,000. Upon the return to the auditor, as a penalty for not listing, the auditor added to the valuation $500, and extended the value of the property at $1,400 (1,500 ?) This is in accordance with the law as it existed at that time. *Laws* 1860, *p.* 26, *Sec.* 30.

*Sec.* 1, *Art.* 9, *Const.* reads as follows: "All taxes to be raised in this State shall be as nearly equal as may be, and all property on which taxes are to be levied shall have a cash valuation, and be equalized and uniform throughout the State." *Sec.* 3 provides: " Laws shall be passed taxing all moneys, credits, investments in bonds, stocks, joint stock companies, or otherwise, and also all real and personal property, according to its true value in money. " * * * We think the law in question is in conflict with these provisions of the constitution.

The return made by the assessor, is his official return of the value of the property taxed, and he is clothed by the law with all the power necessary to arrive at a correct conclusion. *Laws* 1860, *p.* 21, *Sec.* 18.

The valuation of personal property required, is the true value thereof, in money. *Laws* 1860, *Sec.* 9, *p.* 17. This is the valuation made by the assessor in his return, and this is in accordance with the provisions of the Constitution above referred to. *See.* 30 *of Ch.* 1 *of Laws of* 1860, *p.* 26, requires the auditor to *add to the value* as returned by the assessor of all personal property, * * when there has been a neglect or refusal to list the same or to swear to

McCormick et al. v. Fitch.

the return, fifty per centum on the value so returned by the assessor.

This addition by the auditor to the value of the property, does not purport to be based upon any error or mistake as to the true value, in money, of the property, nor upon any concealment or withholding of property not embraced in the return, but is an arbitrary addition by the auditor to the value, in money, of the property returned by the assessor. The tax is assessed upon the aggregate of the assessor's valuation thus increased by the auditor; it is manifest from the return that the true value, in money, of the property, is one third less than the value at which it is taxed. This is clearly a violation of the constitution; the law therefore is void. We are not to be understood as holding that the legislature may not make provision, in the nature of penalties, for a neglect or refusal to list property, or swear to its value; but if they have such power, the penalty must not, under our constitution, be embraced in the value of personal property, which is the basis of taxation.

The error in the case at bar affects only the tax for 1865. So far as the tax for that year is concerned, the error, being in the assessment upon which the taxes for all the purposes specified are based, goes to the whole of the taxes of the plaintiffs for that year, and renders them absolutely void.

The appellants further object, that it was not shown by the defendant, that either the assessor, county commissioners, county auditor, or county treasurer, were sworn; that there is no provision for the appointment of a special deputy treasurer; that the appointment of the defendant as deputy treasurer was upon the condition of giving a bond, which does not appear to have been done.

This action is brought against Fitch only; he justifies as

deputy county treasurer, and his official character is put in issue by the pleadings.

Assuming that under this state of facts the defendant would ordinarily be required to prove that the treasurer by whom he was appointed had been duly sworn, yet in this case it appears that the treasurer was called as a witness by the defendant, and testified that he was at the time of testifying treasurer of Dakota county, and had been since March 1, 1862. To this testimony no objection whatever was made by the plaintiffs.

The evidence having been offered, if the plaintiffs were not satisfied with this mode of proving the official qualification of the treasurer, they should have objected to the evidence; the defendant would then have been advised of the necessity of other evidence, and might have procured it, but the objection not having been made at the time, and the testimony having been received, we think the plaintiffs waived their right to object to its competency.

But as to the *official character* of the other officers named, we think the defendant in this action was entitled to rely upon their character as officers *de facto.*

We see no reason why the rule that the acts of an officer *de facto* are valid as to the public or third persons, should not apply here. As to all the officers except the treasurer, the defendant having shown that they were officers *de facto* it was sufficient.

*Sec. 9, of Ch. 3, Laws 1860, p. 69,* provides that "Each county treasurer may appoint one or more deputies to assist him in the collection of taxes, and may take such bond and security from the person so appointed as he shall deem necessary for his indemnity, and shall in all cases be liable and accountable for the proceedings and misconduct of his deputies in office."

We think, under this section, the language of the appointment of the defendant was sufficient to authorize him, at least, to collect as deputy treasurer, the personal delinquent taxes, among which were the taxes involved in this suit. The requiring of a bond from a deputy, is a matter which is for the security solely of the treasurer, and may be dispensed with by him. In this case, although we discover no proof of the giving of the bond mentioned in the appointment, yet it appears distinctly that the treasurer who made the appointment recognized the defendant as a deputy treasurer, and delivered to him the list of the delinquent personal taxes of the county for collection. This under the circumstances, if the bond was not given, would be a waiver of it by the treasurer.

For the reasons above stated the judgment is reversed, and the findings of the Court set aside, and a new trial granted.

WILSON, Ch. J.—I concur in the conclusion that a new trial should be granted.