LAUGHLIN v. BOARD OF COUNTY COM'RS OF SANTA FE CO. and another.

Filed January 31, 1885.

1. TAXATION—RIGHT OF INDIVIDUAL TO TEST VALIDITY OF A TAX LAW.

The decision of the United States supreme court in the case of *Crampton* v. *Zabriskie*, 101 U. S. 601, establishes the right of an individual tax-payer to obtain relief by a direct suit in his own name against a threatened *devastavit* of public funds in which he has a tax-payer's interest, or against threatened illegal taxation by which his property might be imperiled.

2. SAME—REVENUE LAW OF 1882—INTENTION OF LAW.

The revenue law of 1882, *c.* 62, was intended as a codification and amendment of the pre-existing revenue laws, and to be thoroughly comprehensive respecting the several subjects with which it dealt. It did not contemplate other sources of public income than revenues and licenses of the classes enumerated in its several sections.

3. SAME—REVENUE—SIGNIFICATION OF THE TERM.

The term "revenue," when used in reference to funds derived from taxation, is best interpreted, in the absence of qualifying words or circumstances implying a different signification, as confined to the usual public income taxation.

4. SAME—REVENUE ACT—SIXTH SECTION—SCOPE OF THE SECTION.

The provision of the sixth section for an annual levy, for territorial revenue, of one half of 1 per cent., for ordinary county revenue of one-fourth of 1 per cent., and for the public schools, of one-fourth of 1 per cent., though a restriction of the power of taxation as to those purposes, has no reference to extraordinary taxation for special purposes under particular statutes.

5. SAME—REVENUE ACT—AID VOTED THE TEXAS, SANTA FE & NORTHERN RAILROAD COMPANY—VALIDITY.

The provisions of the general revenue act do not operate to make illegal the aid voted to the Texas, Santa Fe & Northern Railroad Company, and the principal and interest of the county bonds issued for that purpose, when earned under the conditions of the vote, are properly payable out of the proceeds of taxes to be levied and collected in conformity with the act of February 1, 1872, either as part of the general tax levy, or by a levy special to the purpose.

Error to the First judicial district, Santa Fe county.

*N. B. Laughlin*, for self.

*Gildersleeve & Preston* and *John H. Knaebel*, for board of county commissioners.

WILSON, J. The plaintiff in error filed his bill of complaint in the district court for the county of Santa Fe, of which county he is a property owner and tax-payer, praying for an injunction to restrain the board of county commissioners of that county from issuing or delivering to the Texas, Santa Fe & Northern Railroad Company, or to its successors, assigns, or order, any bonds, under the authority of a certain vote or election held in the county of Santa Fe on the eleventh day of August, 1884, by which bonds to the amount of $250,-000 appear to have been voted in aid of that railroad company by the qualified electors; and in case such bonds should be issued or delivered, then to restrain the board of county commissioners from levying or causing to be collected under the provisions of the territorial

statute, approved February 1, 1872, any tax to pay the interest or principal of the said bonds as the same might become due and payable according to the terms of any such bonds; and also to restrain the said railroad company from receiving the said bonds, and from receiving any money that may be directed to be paid on account of any tax that may be levied or collected according to the provisions of the same statute.

The bill is based upon the suggestion set forth therein that the statute authorizing county aid to railroad corporations (Laws 1872, c. 30) has, by means of the revenue act of 1882, (chapter 62,) been repealed, either in its entirety, or at least so far as it authorized the levy and collection of a special tax to meet the principal and interest of the voted bonds as they mature. The bill shows that all the proceedings had in relation to the voting of the bonds in aid of the railroad company have been in strict conformity with the statute of February 1, 1872, and there appears to be no ground whatever for equitable intervention on the subject, unless it be that that statute has been impaired in its efficiency by later legislation. The defendants below demurred to the bill, controverting the legal proposition upon which it is founded, and denying its equities. The court below sustained the demurrer, and a final decree duly passed dismissing the bill upon the merits. From this decree the complainant below appeals to this court.

Since the decisions of the supreme court of the United States in the case of *Crampton* v. *Zabriskie*, 101 U. S. 601, no suggestion can be properly entertained in the courts of this territory against the rights of an individual tax-payer to obtain relief by a direct suit in his own name against a threatened *devastavit* of public funds in which he has a tax-payer's interest, or against threatened illegal taxation by which his property might be imperiled. Acquiescing thus in the decision of a tribunal which is controlling in the territories, we are happily relieved from the consideration of the question of chancery jurisdiction which has given rise to much conflict of decision throughout the various states. It is contended by the plaintiff in error that the express and obvious purpose of the revenue law of 1882 (chapter 62) is to substitute its provisions for all antecedent laws or parts of laws on the subject of revenue, and to repeal all previous laws regarding the raising of revenue, and therefore that so much of the county bonding act of 1872 (chapter 30, § 4) as provides for the levying and collection of a special tax under its provisions is thus expressly repealed, and the other parts of the same act are repealed by necessary implication, since it would be impossible to satisfy the indebtedness thereby contemplated by means of one-quarter of 1 per cent. *ad valorem* tax devoted to county purposes by the revenue act of 1882. If we could give to the revenue act in question the broad construction contended for, we might well hold that no county in the territory can aid a railroad under the act of 1872, except so far as it can furnish

aid out of what it can spare from its share—one-quarter of 1 per cent. —of the stated annual tax.

But we are unable to yield our assent to this view of the scope and intent of the revenue act. That statute was evidently designed as a codification and amendment of the pre-existing revenue laws. The statutes relating to the levying and collection of the regular taxes,—such as designated the subjects of taxation, specified exemptions, provided the rate of taxation, the mode of collection, etc.,—as well as those relating to the subject of licenses, and which were only to be found scattered through the statute-books for a considerable series of years, were grouped together, revised, and amended in one general act in 1882. The legislative intent was to make that act thoroughly comprehensive respecting the several subjects with which it dealt, and this intent, quite evident from the very terms of the act, is only emphasized by the repealing clause, which refers not only to all acts and parts of acts "in conflict," but also to "all acts and parts of acts * * * regarding the raising of revenue," etc. It is very doubtful whether the last-cited clause added anything to the effect of the previous repealing clause, and whether, independently of any repealing clause, the act might not well be interpreted as intended to embrace in one complete system the whole subject of ordinary revenues and licenses, and to operate as a repeal by implication of any non-included parts of the old law on the same subject. *U. S.* v. *Tynen,* 11 Wall. 88. The fullness of the repealing clause relieves the act from any judicial doubt on this point, and thus accomplishes some purpose. In view of this manifest intent of the revenue act, it would be an unnatural and strained construction to hold that it contemplated other sources of public income than revenues and licenses of the classes enumerated in its several sections; that is, such as arise in and are required for the ordinary course of official administration. Courts have frequently had occasion to construe similar phraseology, and, in such construction, they hold almost uniformly that the term "revenue," when used with reference to funds derived from taxation, is best interpreted, in the absence of qualifying words or circumstances implying a different signification, as confined to the usual public income taxation. *U. S.* v. *Norton,* 91 U. S. 568; *Fletcher* v. *Oliver,* 25 Ark. 289; *Harper* v. *Commissioners,* 23 Ga. 566.

When we consider how minute a catalogue of subjects is included in the revenue act in question, it is impossible to believe that the legislative mind intended, while expressly enumerating these, to leave to mere implication the inclusion of other matters of great and special moment, such as the extraordinary power in counties of creating a large debt by popular vote, and the power in the several counties to levy taxes for the payment of judgments. Laws 1876, c. 1, § 7. The general revenue act contains no express limitation upon the power of taxation. Nevertheless, the provisions of the sixth section, viz.: "There shall be levied and assessed upon the taxable property

within this territory, in each year, the following taxes: For territorial revenue, one-half of one per cent; for ordinary county revenue, one-fourth of 1 per cent; for maintenance and support of public schools, one-fourth of one per cent.,"—may well be construed to imply a restriction on the taxing power, so far as it relates to the subjects specified. In the absence of such a restriction, expressed or implied, the power to contract and to incur public indebtedness, implies the power to raise by taxation the funds needed for the execution of the former power. *Loan Ass'n* v. *Topeka,* 20 Wall 655. But the provisions above cited have exclusive reference to taxation for the ordinary purposes of the government,—the usual disbursements during each fiscal year in the ordinary administration of public affairs. They have no reference whatever to the execution of extraordinary powers under special statutes, and which are wholly outside of the common course of administration. *Nashville R. Co.* v. *Franklin Co.* 7 Amer. & Eng. R. R. Cas. 260; *McCormick* v. *Fitch,* 14 Minn. 252, (Gil. 185.) Even an express limitation on the rate of taxation is not generally operative to prevent taxation for extraordinary purposes; as, for instance, that of satisfying judgments against a municipality. *Butz* v. *Muscatine,* 8 Wall. 575; *McCracken* v. *San Francisco,* 16 Cal. 591.

It could hardly be seriously contended that any of the provisions of the general revenue act operate to limit a special power previously granted to the several boards of county commissioners to levy taxes for the payment of judgments, (Laws 1876, *c.* 1, § 7,) or tend to affect the funding acts of the same session. The provisions requiring the proper officers to levy a stated annual tax of 1 per cent. for ordinary purposes appear to have been first enacted at the same legislative session at which the county bonding act in aid of railroads was passed. They occur in chapter 22 of the Laws of 1872, § 6. The county bonding act is chapter 30 of the same session. It is obvious, as well from this coincidence in the time of enactment as from the phraseology of the fourth section of the later act, that the legislature intended to put both acts in force according to their terms, and to promulgate the former as relating to ordinary governmental purposes, and the latter as relating to an extraordinary purpose, dependent upon the express will, to be declared by vote of the tax-payers immediately affected. The re-enactment of these provisions in the general revenue act of 1882 evinces no legislative intent to impart to them any greater meaning or efficacy than they imported at the time of their original enactment. On the contrary, it is plain that they carry with them into the latter statute only the same force and effect that they possessed in their original form. Thus illustrated by the circumstances of their adoption, they exhibit all the more clearly their entire consistency with the provisions of the county bonding act. We are therefore of opinion that the aid voted in favor of the defendant railroad company was legally voted, and that the principal and interest of the county bonds, when earned under the conditions of

the vote, are properly payable out of the proceeds of taxes to be levied and collected in conformity with the requirements of the act approved February 1, 1872, (chapter 30, Laws 1872, § 4,) either as part of the general tax levy, or by a levy special to the purpose. The decree of the district court is affirmed.

BELL, J., concurs.