Brown, J.
 

 The issues presented by the pleadings, in this case hinge upon the constitutionality of Chapter 14571 of the Laws of Florida approved June 29, A. D. 1929.
 

 It is first contended that the title to this act is defective in that it contains more than one subject. The title reads as follows:
 

 "An Act Requiring All Persons, Associations of Persons, Firms or Corporations Owning or Having Control, Custody or Management of Real and Tangible Personal Property, to Make and File Tax Returns; and to that End, Providing for Certain Forms and Records;
 
 Prohibiting the Recording of Deeds and Bills of Sale unless the Post Office Address of the Grantee is Stated Therein;
 
 Prescribing the Oath to Said Return and Providing a Penalty for Failure or Neglect to Make and File Said Return and for Making False Return.” (Italics supplied.)
 

 The point is made that the italicized clause of the title, "prohibiting the recording of deeds and bills of sale unless
 
 *1351
 
 the post office address of the grantee is stated therein,” deals with a different subject from and has no connection whatever with the remainder of the title, and that it is only by reference to the body of the act that any sort of connection between the two can be apprehended, and that even then the connection, if any, is not inherent, but-purely artificial. It is conceded that if this clause or subject were omitted, the remainder of the title would be free from criticism on constitutional grounds.
 

 This Court has held that, in determining whether provisions contained in a legislative act are embraced in one subject and matter properly connected therewith, as required by Section 16 of Art. Ill of the Constitution, the
 
 subject
 
 to be considered is the one expressed in the title of the act. Ex Parte Knight, 52 Fla. 144, 41 So. R. 786; 120 Am. St. R. 191; Williams v. Dormany, 126 So. R. 117, 123. And of course the title should express only one subject. Whether the inclusion of more than one subject in the title is fatal to the act, will be discussed presently.
 

 The object of this constitutional provision, which in substance has been placed in practically all of the constitutions of the several states, was to prevent hodge-podge, log-rolling and omnibus legislation.. It had become quite common for legislative bodies to embrace in the same bill incongruous matters having no relation to each other, or to the subject specified in the title, by which means measures were often adopted without attracting attention. And frequently such distinct subjects, affecting diverse interests, were combined in order to unite the members who favored either in support of all. And the failure to indicate in the title the object of a bill often resulted in members voting ignorantly for measures which they would not knowingly have approved. And not only were members thus misled, but the public
 
 also;
 
 and legislative provisions were sometimes
 
 *1352
 
 pushed, through which would have been made odious by popular discussion and remonstrance if their pendency had been seasonably demonstrated by the title of the bill. Thus it was long since decided that these evils should be corrected by constitutional provisions preventing such aggregations of incongruous measures by confining each act to one subject and matter properly connected therewith, which subject should be briefly expressed in the title. ' Lewis’ Sutherland Statutory Construction, Section 3.
 

 It is well settled that it is a sufficient compliance with Sec. 16 of Art. Ill of the Constitution if the real subject of the act is briefly expressed in its title; matter properly connected with such subject may then be embraced in the act without being required to be specifically indexed in the title. This Court is also committed to the doctrine that amplification of the title to an act, so as to expressly mention matters germane thereto and properly connected therewith, does not nullify the title, and that merely unnecessary or superfluous matter added to or contained in the title will not necessarily vitiate such title, or lay it open to the criticism of having two subjects, provided such unnecessary or superfluous matter is not calculated to mislead or deceive, but tends to call the legislator’s attention more fully to the existing legislation to be affected. Also, that even though the general subject of an act is not expressly named in the title, yet if it is clearly disclosed or may be readily inferred or easily spelled out from the details expressed in the title, it will be sufficient. State ex rel. Ellis, Attorney General, v. Bryan, 50 Fla. 293, 39 So. R. 929, and the line of cases following that decision.
 

 Looking only t'o the language of the title, it appears that one subject of the act as expressed therein is, in substance, to require all persons or corporations owning or having the control, custody or management of real and
 
 *1353
 
 tangible personal property, to make and file sworn tax returns. The other matters mentioned in the title, with the exception of the clause regarding the recording of deeds and bills of sale above referred to, relate to matters properly connected with such general subject. Schiller v. State, 49 Fla., 25, 38 So. R. 706. If the clause of the title which is objected to, when considered in the light of the title alone, could be conceded to be even
 
 prima facie
 
 properly connected with the other and first mentioned subject contained in the title, we might be able to hold that, under the liberal principles of construction above referred to, this clause might be regarded as harmless surplusage, rather than as an expression of an additional independent and disconnected subject, and thus avoid vitiating the entire title of the act on the ground that it contains two subjects. But this clause is incongruous with the other subject of the act as expressed in the title, and can hardly be treated as mere surplusage in order to uphold the validity of the remainder. Therefore, if the inclusion of two distinct and incongruous subjects in the title renders the title, as an entirety, unconstitutional, regardless of what might be contained in the body of the act, then for this reason alone this act would have to fall. However, we do not deem it necessary to decide this question in the case at bar, for the reason that not only does the title of the act here in question contain two distinct and improperly connected subjects, but the same is true with the body of the act, which deals with both such, subjects.
 

 In this connection, we might' call attention to the fact that the Supreme Court of Alabama, construing a constitutional provision similar to our own, has held that where the title of an act contains more than one subject, this is immaterial if the act itself contains but one of them. That court on this point said: ‘ ‘ The constitutional man
 
 *1354
 
 date is not that two subjects shall not be expressed in the title, but that ‘each law shall contain but one subject, which shall be clearly expressed in its title ’. ’ ’ Therefore, the Court reasoned, that if the enactment assailed contains only one subject and matter properly connected therewith, the constitutional mandate is satisfied, though there may be two subjects expressed in the title. Judson v. City of Bessemer, 87 Ala., 240, 6 So. R. 267. Without deciding this question, the writer is impressed with the merit of this view, as it is in line with the traditional policy of the courts to uphold legislation unless clearly in conflict with the fundamental law.
 

 However, the same court has held, in a well considered opinion by Chief Justice Brickell, that an act expressing more than one subject in its title and embodying such diverse subjects in its provisions, cannot be sustained as valid. In discussing the subjects dealt with by the act, and also contained in its title, in that case, the distinguished Chief Justice said: “Are these separate, distinct subjects, having no common ingredient, as known in prior legislation and prior judicial decisions? If they are, reluctant as are the courts to sit in judgment upon the title of legislative enactments, obedience to the Constitution requires that the act be condemned. ’ ’ Builders & Painters Supply Co., v. Lucas, 119 Ala., 202, 24 So. R. 416.
 

 In Lewis’ Sutherland on Statutory Construction, 2nd 'Ed., See. 144, the principle is thus stated: “If an act embraces two or more subjects, and two or more of the same are expressed in the title, the whole act is void.” Citing a number of cases.
 

 If this Court were at liberty to choose between the two subjects and hold the act valid as to one and void as to the other, we might say that it would appear from the act as a whole, including its title, that' the paramount or domi
 
 *1355
 
 nant subject, wbicb the legislature had chiefly in mind, was that one dealing with requiring sworn tax returns. If we were at liberty to so choose, the question would still arise, whether those provisions of the act relating to prohibiting the recording of deeds and bills of sale unless the permanent post office address of the grantee was stated therein could be deemed matter properly connected with the dominant subject so selected. As above stated, so far as the title is concerned no proper connection between the two subjects appears.
 

 When we look to the body of the act, an attempted connection between the two subjects does appear. The question as to whether the connection thus made by statutory provision is a “proper” one, will be considered a little later on. Section
 
 i
 
 of the act, which deals with this matter, provides that the Clerk of the Circuit Court shall annually furnish to the Tax Assessor a list of all transfers of property, real and personal, recorded during the preceding year, with the name of the grantees and their permanent post office addresses. That this might prove a convenience in facilitating the work of the Tax Assessor is shown by the provision requiring the' assessor to mail a notice to persons who have failed to make the return required of them. So the apparent purpose of the provision is to assist the assessor in keeping up with transfers of property and in getting the addresses' of the owners, though it would take many years for the assessor to get the addresses of all the tax payers by means of this method.
 

 It is conceded by distinguished counsel for appellant that the legislature in a single act might require the making and filing of tax returns, provide for certain forms and records, prescribed the oath to the return, and impose a penalty for' failure or neglect to make and file the returns and for making false returns; that those matters
 
 *1356
 
 are all reasonably cognate. But it is insisted that there is intrinsically no necessary or logical connection between that subject and the making of the validity of the record title to land to depend upon the insertion of the permanent post office address of the grantee in the deed. It is argued that in the specific instance here presented, it may well be doubted whether any of the members who voted for this measure realized that the consequence would be to invalidate the record title to property, wherever through some error or misprision, the permanent' post office address of the grantee is misstated or entirely omitted.
 

 The case of Carr v. Thomas, 18 Fla. 736, 747, is cited in support of the contention that this provision of the statute is not matter
 
 properly connected
 
 with the first expressed subject of the act. The statute in that case was entitled “An act providing for the acknowledgment of deeds and other conveyances of land,” and after providing how deeds should be executed and acknowledged, contained a 5th Section in these words: ‘ ‘ Every conveyance of real estate within this State hereafter made, which shall not be recorded in the County in which the lands are situated within six months after the execution thereof, shall be void as against any subsequent purchaser.” In the opinion of the Court, delivered by Chief Justice Randall, the Court quotes Section 14 of Art. IY of the Constitution, then in force, as follows: “Each law enacted in the legislature shall embrace but one subject and matter properly connected therewith, which subject shall be briefly expressed in the title,” and says: ‘ ‘ The title of the Act shows its purpose to be a regulation of the ‘acknowledgment of deeds and other conveyances of lands. ’ the subject of the 5th Section is a declaration of the effect of omitting to record a conveyance. The one subject does not embrace or have any proper connection with the other. The result is that the said 5th Section is
 
 *1357
 
 void by the terms of the Constitution, which prohibits legislation upon one subject under the guise of an act relating to another object and purpose.” See also Opinion of Justices, 14 Pla. 285; S. F. & W. Ry. Co. v. J. H. Geiger, 21 Fla. 669, 58 Am. R. 697; State ex rel. Gonzalez v. Samuel Palmes, 23 Fla. 620, 3 So. R. 171; State ex rel. Attorney General v. Burns, 38 Fla. 367, 21 So. R. 290; Wade v. Atlantic Lumber Co., 51 Fla. 628, 41 So. R. 72; Ex Parte Knight & Knight, 52 Fla. 144, 41 So. R. 786, 120 Am. St. R. 191; Smith v. Chase, 91 Fla. 1044, 109 So. R. 94; Prairie Pebble Phos. Co. v. Silverman, 80 Fla. 541, 86 So. R. 508; Albritton v. State of Florida, 82 Fla. 20, 89 So. R. 360; Martin et al. v. Dade Muck Land Co., 95 Fla. 530, 116 So. R. 449; State ex rel. Davis v. Love, 126 So. R. 374.
 

 In the case of Smith v. Chase, 91 Fla. 1044, 109 So. R. 94, it was said:
 

 "Provisions that are necessary incidents to or that tend to make effective or to promote the object and purpose of the legislation that is included in the subject expressed in the title of the act, may be regarded as matter properly connected with the subject of the act, as in People v. Newcom, 318 Ill. 188, 149 N. E. R.
 
 269; but where such provisions constitute a broader or an essentially different subject that is not properly connected with the stated subject of the act, such provisions violate Section
 
 16,
 
 Article III of the Constitution, and are inoperative.
 
 See Prairie Pebble Phosphate Co. v. Silverman, 80 Fla. 541, 86 So. R. 508; Carr v. Thomas, 18 Fla. 736; Wade v. Atlantic Lumber Co., 51 Fla. 628, 41 So. R. 72.” (Italics supplied.)
 

 While the provision prohibiting the recording of deeds and bills of sale unless the permanent post office address is stated therein, may facilitate to a. slight degree the enforce
 
 *1358
 
 ment of the act, as indicated by other provisions thereof above mentioned, and which are not mentioned in the title, such a provision is not matter properly connected “with the subject of the act”—that is,- with the requirement of
 
 sworn,
 
 tax returns. The working feature connecting the two is extremely tenuous and artificially created by certain provisions of the act itself. It is not a natural, logical or intrinsic connection.. One subject of the act deals with compulsory tax returns. The prohibition against the recording of deeds unless the post office address of the grantee is stated therein, deals with an entirely different and distinct subject matter, that is, with the subject of our recording acts, which are thereby sought to be vitally changed and amended. This is entirely outside of the legitimate scope of the other subject of the act. There is nothing in common between the two. It is therefore not matter properly connected therewith, as required by the Constitution, and hence the body as well as the title deals with two distinct and independent subjects, thereby invalidating the entire act.
 

 ' There is also made to this Act another serious constitutional objection in addition to the one above discussed— one that goes to the effect of the Act in respect to creating an .artificial and arbitrary inequality in valuations for taxation purposes, valuations that have no just relation to the real value's of the property assessed.
 

 “Valuations for taxation must have a just relation to the real and known value of the property assessed, and not to some unknown and speculative value, and there must be no substantial inequality in valuations in various kinds and items of property that is subject to tax,” etc. Camp Phosphate Co. v. Allen, 77 Fla. 341, 81 So. R. 503.
 

 It is of the very foundation of our system of taxation that the legislature shall provide for a uniform and equal
 
 *1359
 
 rate of taxation (except with respect to intangible property, when a special rate not exceeding five mills may be assessed exclusive of all other State, county, district, municipal taxes) and shall prescribe such regulations as shall secure a just valuation of all property, both real and personal (excepting such property as may be exempted for municipal, educational, literary, scientific, religious or charitable purposes). Section 1, Article IX, of the Constitution.
 

 It may be conceded that the legislature may require tax returns and impose a penalty for failure to make tax returns, and may punish the tax payer by fine or imprisonment. But it may not augment the assessment beyond a just valuation of the property, and that just valuation is the valuation that is just with respect to similarly situated property of like nature. "* * * and there must be no substantial inequality in valuations in the various kinds and items of property that is subject to tax.” Camp Phosphate Co. v. Allen, 77 Fla. 341, 343; 81 So. R. 503.
 

 " ‘A just valuation of all property’ is not
 
 secured
 
 as is mandatorily required by the Constitution when the assessment valuation of some property is higher proportionately than the valuation put upon other property assessed for the same purpose.” Sparkman v. State, 71 Fla. 210; 71 So. R. 34. Graham v. City of West Tampa, 71 Fla. 605; 71 So. R. 926.
 

 "While it is uniformly held that mere errors of judgment by taxing officials in making assessments of property for taxation will not constitute a proper basis or support for claims of unjust discrimination, yet, on the other hand, it is equally well settled, in this and other jurisdictions, that intentional, systematic undervaluation by taxing officials of other taxable property of t'he same class, which, in effect, amounts to an intentional violation of the essential
 
 *1360
 
 principles of practical uniformity, contravenes the constitutional rights of one whose property is overvalued.” Camp Phosphate Co. v. Allen, 77 Fla. 341; 81 So. R. 503; Sioux City Bridge Co. v. Dalota County, 260 U. S. 441, 43 C. Ct. 190, 67 L. Ed. 340, 28 A. L. R. 979; Sunday Lake Iron Co. v. Township of Wakefield, 247 U. S. 350, 38 Sup. Ct. R. 495, 62 L. Ed. 1154; City of Tampa v. Palmer, 89 Fla. 514, 105 So. R. 115.
 

 “Uniformity and equality of rate and just valuation are required.” Louisville
 
 &
 
 N. R. Co. v. Amos, 123 So. R. 745, 747.
 

 It was argued below that the penalty is distinct from the assessment. But this is in conflict with the statute itself. By Section 3, “It shall be the duty of the assessor of taxes to whom the said return is made to proceed to assess the property listed in such return from the information contained therein,” from which it may be inferred that the return was intended to precede the assessment. By Section 5—-if there be a failure or neglect to make a tax return, the tax assessor is to mail a notice and unless such tax return is delivered to the tax assessor within thirty days after the mailing of said notice, “the said assessor shall assess the real and tangible personal property of such defaulting property owner from the best information obtainable, and the tax assessor shall add to said total assessment a penalty of twenty-five per cent (25%) thereof.
 

 That the twenty-five per cent becomes part and parcel of the assessed valuation would seem clear from the terms used. But it is a necessary implication, for no other means of collecting the twenty-five per cent is suggested, and the statute would otherwise be ineffectual..
 

 Whatever doubt there may be is cleared by the succeeding paragraph providing that under certain circumstances the owner may apply at the annual meeting of the Board
 
 *1361
 
 of County Commissioners held for the purpose of equalizing taxes for a remission of said penalty, and under certain circumstances the said Board at said meeting (but at no other time) shall be authorized to remit the penalty so assessed and shall instruct the tax assessor to “drop said penalty from his tax roll and to reassess such person, association of persons, firm or corporation, according to the return then filed.”
 

 Such an imposition of penalty was held to be in conflict with the constitutional provisions of the State of Minne-s sota: “See. 1, Art. IX, Const., reads as follows: ‘AH taxes to be raised in this State shall be as nearly equal as may be, and all property on which taxes are to be levied shall have a cash valuation, and be equalized and uniform throughout the State.’ Sec. 3 provides: ‘Laws shall be passed taxing all moneys, credits, investments in bonds, stocks, joint stock companies, or otherwise, and also all real and personal property, according to its true value in money’.” McCormick et al. v. Fitch, 14 Minn. 252, 262. Concerning which the Court said (citing the law in question) : “This addition by the auditor to the value of the property, does not purport to be based upon any error or mistake as to the true value, in money, of the property, nor upon any concealment or withholding of property not embraced in the return, but is an arbitrary addition by the auditor to the value, in money, of the property returned by the assessor. The tax is assessed upon the aggregate of the assessor’s valuation thus increased by the auditor; it is manifest from the return that the true value, in money, of the property, is one third less than the value at which it is taxed. This is clearly a violation of the Constitution; the law therefore is void. We are not to be understood as holding that the legislature may not make provision, in the nature of penalties, for a neglect or refusal to list property,
 
 *1362
 
 or swear to its value.; but if they have such power, the penalty must not, under our constitution, be embraced in the value of personal property, which is the basis of taxation.” McCormick et al. v. Fitch, 14 Minn. 252, 263.
 

 In the case of Ferguson v. Academy Consol. Independent School District, 14 S. W. 2nd 1051, the penalty for failure to make tax return was attempted to be imposed by the authorities of the district. The Court held that there was neither constitutional nor statutory authority for this action of the school board, and against the contention that inasmuch as the lands, including penalty, “were not assessed in excess of their true and fair market value, any error of law or mistake of fact made by the board as to the manner of arriving at that value was harmless and immaterial.” Concerning which, the Court said: “The contention cannot be sustained, because in arriving at that true and fair market' value the board failed to assess all taxes equal and uniform as required by the Constitution; that is, the board did not assess against lands of the same character and value of appellants ’ lands, and belonging to owners who rendered theirs for taxation, the 10 per cent penalty or increase. Therefore, there is a lack of equality and uniformity between the valuations of lands belonging to those who rendered for taxation and appellants’ lands, which were not rendered for taxation, to the extent of the 10 per cent penalty. But, appellee further contends that, since the board passed.the 10 per cent penalty or increase alike to all lands not rendered for taxation, such action constituted a proper classification of grouping of such lands for taxation purposes, and that the action of the board was therefore not violative of the equal and uniform provision-of the Constitution. The vice of this contention is that, in assessing the penalty or making the increased valuations the board’s action was not based upon any proper classifi
 
 *1363
 
 cation of the lands themselves, but upon a classification of the owners, and solely as a penalty, and without any reference to true and fair market value of the lands. There is no authority of law for the penalty, and its addition to the already assessed valuations of appellants ’ lands was, therefore, void as being in violation of the equal and uniform taxation clause of the Constitution.”
 

 If there were no other constitutional objection to the Act, the provision imposing a penalty by way of an arbitrary enhancement of the assessed valuation of property for taxation being unconstitutional, would have to be regarded as eliminated. But, as above shown, the Act deals with two separate and distinct subjects, both in its title and in its provisions, thus rendering the entire Act unconstitutional and void.
 

 The conclusion above reached requires the reversal of both the orders appealed from.
 

 Reversed and remanded.
 

 Ellis, Strum and Buford, J. J., concur.
 

 Terrell, C. J., and Whitfield, J., dissent.