SHARP, Judge.
Williams petitions for a writ of certiorari to overturn the decision of a circuit court acting in its appellate capacity.[1] The issue in this case is whether section 843.035, Florida Statutes (1983), passed as Chapter 82-150, Laws of Florida,[2] is unconstitutional because it violates the single subject matter requirement for legislation in our state constitution.[3]
The county court granted Williams’ motion to dismiss an information charging her with a violation of section 843.185, Florida Statutes (1981), now numbered 843.035, on the ground that it violated the single subject limitation and was therefore unconstitutional. The circuit court reversed, relying on State v. Bunnell, 447 So.2d 228 (Fla. 2d DCA 1983), which involved the same statute and the same constitutional challenge. We disagree with Bunnell, and accordingly we grant the writ.
Section 843.035 was enacted as the first section of Chapter 82-150. It defines the crime of obstruction by false information, and provides for a punishment. Section 2 of the act deals with amendments and revi *320 sions of subsections (3), (4), and (8), of section 23.152, Florida Statutes (1983). Those provisions change the membership and staff of the Florida Council on Criminal Justice, alter the members’ voting rights, terms of office, and add a sunset review provision to Chapter 23. The title of the act is as follows:
An act relating to the Florida Council on Criminal Justice; creating s. 843.185, Florida Statutes, prohibiting the obstruction of justice by false information; providing a penalty; amending s. 23.152(3), (4) and (8), Florida Statutes, changing and reducing the membership of the council; providing for nonvoting representatives of members; providing for review and repeal of Part VIII of Chapter 23, Florida Statutes, relating to the “Florida Criminal Justice Council Act” in accordance with the Regulatory Sunset Act; providing an effective date.
The Florida Constitution, article III, section 6, contains two pertinent limitations on the form in which the legislature may pass laws:
Every law shall embrace but one subject and matter properly connected therewith, and the subject shall be briefly expressed in the title.
This language originated in article III, section 16 of Florida’s 1885 Constitution. Both constitutional provisions require that the subject be “briefly expressed in the title,” and that the bill contain only matters “properly connected” with the subject. The title of the act in this case briefly expresses the substance, and is not misleading; [4] but the problem with the act as we analyze it, is that the two sections are not germane, nor “properly connected” to a single subject.
These provisions were designed to prevent various abuses commonly encountered in the way laws were passed by state legislatures. One was logrolling,[5] which resulted in hodgepodge or omnibus legislation. Colonial Investments Co. v. Nolan, 100 Fla. 1349, 131 So. 178 (1930). As Justice Brown wrote in Nolan,
It had become quite common for legislative bodies to embrace in the same bill incongruous matters having no relationship to each other.... And frequently such distinct subjects, affecting diverse interests, were combined in order to unite the members who favored either in support of all....
131 So. at 179 (quoting Lewis’ Sutherland, Statutory Construction, § 3).
The logrolling problem has also been alluded to by our supreme court in its interpretation of article III, section 6 of the 1968 constitution.[6] If diverse and dissimilar matters were included within one law, the legislative process could be subverted by passing matters which really have no majority support in the legislative body, but which were passed because legislators were voting to approve other provisions included in the bill.[7] It could also impair the Governor’s veto power if he or she were forced to accept an unwanted or undesirable provision in order to obtain the enactment of a desirable one.[8]
The Florida Supreme Court has interpreted this provision liberally, and has upheld laws which apparently contain many different subjects. Chenoweth v. Kemp, 396 So.2d 1122 (Fla.1981) (Sundberg, J., dissenting). It is perhaps a less stringent provision than the one which requires one subject for initiatives to amend the constitution. Fine v. Firestone, 448 So.2d 984 (Fla.1984). Very comprehensive law revisions have been sustained in the face of challenge by the one subject limitation for laws. See State v. Volusia County Indus *321 trial Development Authority, 400 So.2d 1222 (Fla.1981); Chenoweth; Santos; State v. Lee, 356 So.2d 276 (Fla.1978); State ex rel. Flink v. Canova, 94 So.2d 181 (Fla.1957). However, the provision requiring that all the matters passed in one bill be germane and logically related in some way to each other has always been recognized by the courts.[9]
The bill in question in this case is not a comprehensive law or code type of statute. It is very simply a law that contains two different subjects or matters. One section creates a new crime and the other section amends the operation and membership of the Florida Criminal Justice Council. The general object of both may be to improve the criminal justice system, but that does not make them both related to the same subject matter.
The Bunnell court reasoned that although not expressed in the title, it could infer from the provisions of the bill, a general subject, the criminal justice system, which was germane to both sections. Even if that subject was expressed, for example, in a title reading “Bill to Improve Criminal Justice in Florida,” we think this is the object and not the subject of the provisions.[10] Further, approving such a general subject for a non-comprehensive law would write completely out of the constitution the anti-logrolling provision of article III, section 6.
We think this ease is. governed by Nolan and Albritton v. State, 82 Fla. 20, 89 So. 360 (1921). In Nolan, the court held that a law which contained provisions requiring sworn tax returns and which prohibited the recording of deeds without stating the grantor’s address, failed the one subject requirement because the two matters were too independent and unrelated. Significantly, the court did not say the two matters were related to the general “subject” of integrity in public documentation. As we stated above, the general objective of the legislative act should not serve as an umbrella subject for different substantive matters.
Similarly in Albritton, the court held that the inclusion of a provision making it a crime to become voluntarily intoxicated in a law prohibiting the manufacture and traffic in intoxicating liquor during Prohibition, failed the one subject requirement. The dissent pointed out that there is a logical connection between all the provisions, if the subject was broadly viewed as implementing the eighteenth amendment to the United States Constitution. However, the majority thought the substantive crime was not germane to the sale and manufacture' of liquor. In this case, the subject “Criminal Justice System” is much broader than the subject of Prohibition.
We find that section 843.035 is unconstitutional, and we certify a conflict with our decision and Bunnell. Accordingly, we quash the opinion of the circuit court, and reinstate the county court ruling dismissing the information against Williams.
WRIT OF CERTIORARI GRANTED.
DAUKSCH and COBB, JJ„ concur.

. We have jurisdiction. Combs v. State, 436 So.2d 93 (Fla.1983); Art. V, § 4, Fla. Const.; Fla.R.App.P. 9.030(b)(2).

. Whoever in any manner knowingly gives a false name or a false address with intent to obstruct the due execution of the law, or with the intent to intimidate, hinder, or interrupt any law enforcement officer or beverage enforcement agent in the legal performance of his duty under the constitution or laws of this state, whether such obstruction is effected or not, is guilty of a misdemeanor of the first degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.

.Art. Ill, § 6, Fla. Const.

. Williams v. State, 370 So.2d 1143 (Fla.1979); Rouleau v. Avrach, 233 So.2d 1 (Fla.1970).

. The term "logrolling," originated perhaps two hundred or more years ago. It is an "allusion, originally American, to neighbors who assist a new settlor to roll away the logs of his clearing." Brewer’s Dictionary of Phrase and Fable, (Evans rev. ed. 1970). Originally benevolent, the term has suffered somewhat from its association with politics.

. Santos v. State, 380 So.2d 1284 (Fla.1980).

. Fine v. Firestone, 448 So.2d 984 (Fla.1984).

. Brown v. Firestone, 382 So.2d 654 (Fla.1980).

. See Santos; Board of Public Instruction of Broward County v. Doran, 224 So.2d 693 (Fla.1969); State ex rel. Flink v. Canova, 94 So.2d 181 (Fla.1957); Alterman Transport Lines, Inc. v. State, 405 So.2d 456 (Fla. 1st DCA 1981); State v. Volusia County Industrial Development Authority, 400 So.2d 1222 (Fla.1981).

. Canova.