ANN M. BONHAM *vs.* LOWELL S. WEYMOUTH and Wife.

July 3, 1888.

**Partition—Litigation of Adverse Title.**—In an action for partition, the whole matter of title, and of the rights of the parties in the premises sought to be partitioned, may be determined, and a partition ordered, whenever the plaintiff shows himself seized of the requisite title, whether the land is held or claimed adversely to him or not.

**Taxes — Deed under Gen. St. 1866, when Evidence of Title.**— A tax deed of "forfeited lands," executed under Gen. St. 1866, *c.* 11, § 138, or section 156, is not *prima facie* evidence of title, without preliminary proof *aliunde* the deed of authority from the state auditor to the county auditor to make the sale recited in the deed.

**Same — Deed of Forfeited Land — Recitals held Insufficient.** — Such deed must recite a compliance with all the terms of the power, and the existence of such facts as are essential, under the authority, to its validity; and no such fact not embraced in the recitals will be presumed. .Where the instructions to the county auditor were to sell a tract of land "to such persons as will pay therefor the amount of taxes, interest, and charges due thereon," and the deed recited that the purchaser "offered to pay for the land a specified sum, which offer was accepted, being the highest offer therefor," without stating or reciting that this sum was equal to the amount of taxes, interest, and charges due on the land, *held*, that the instructions did not tend to prove any authority to the county auditor to make the sale recited in the deed.

**Same — Laws 1874, c. 1 — Published Delinquent List — Statement of Amounts of Taxes is Jurisdictional.**—Under Laws 1874, *c.* 1, it is essential to the jurisdiction of the court, as to any tract of land, that the published delinquent list state the amount of tax delinquent against such tract; and, if it fails to do so, the court acquires no jurisdiction to render judgment against the piece or parcel as to which such omission occurs.

**Same — Statement of Amount of Tax held Insufficient.**— The placing of two figures opposite the description of a tract, in a column headed merely "Amt.," but without any dollar or other mark, or anything else to indicate what the figures were intended to represent, is not a sufficient statement of the amount of tax to give the court jurisdiction to enter judgment against the tract for any sum.

Appeal by defendants from an order of the district court for Hennepin county, *Young*, J., presiding, refusing a new trial. Exhibits A and B, and Exhibit E, (extract from published delinquent list,) referred to in the opinion, are as follows:

"*Exhibit A.*

"STATE OF MINNESOTA, AUDITOR'S OFFICE.

"ST. PAUL, Aug. 10, 1866.

"*To the several County Auditors in the State of Minnesota:*

"GENTLEMEN: You will notice by the provision of section 156, chapter 11, of the General Statutes, that all lands forfeited to the state for the non-payment of taxes prior to the first day of June, A. D. 1865, and remaining unsold on the second day of March, A. D. 1866, the date of the passage of said chapter, and which were not redeemed prior to the first Monday in June, 1866, became the absolute property of the state, and can only be disposed of as this office may direct.

"In pursuance of the authority vested in me under said provisions, I have determined to dispose of said lands at private sale, and to facilitate such disposition and secure uniformity of procedure in the several counties, the accompanying form of certificate of sale and deed of conveyance is furnished and which you will make use of in all cases.

"You are therefore authorized and directed to dispose of said lands at private sale, for cash, to such persons as will pay therefor the amount of taxes, interest, and charges due thereon, on the first Monday of June, A. D. 1866; and where two or more persons apply to purchase the same lands at the same time, you will give preference to the person making the highest offer.

"It is desirable that these lands should be disposed of immediately, and as much of the amount charged against them realized as possible. Consequently you will report to me from time to time the lands remaining unsold, their general description and condition, and any proposition for purchasing the same, with your recommendation in

regard to their disposal, when I will give you special directions in each case.

"In all cases where lands are sold, the certificate of sale must be at once returned to this office for filing.

"Respectfully yours,

.(Seal of State Auditor.)                              "CHAS. MCILRATH."

### "*Exhibit B.*

"*Know all men by these presents,* that, whereas the lands hereinafter described had become duly forfeited to the state of Minnesota, for non-payment of taxes duly assessed thereon, prior to the first day of June, A. D. 1865, and remained unsold and unredeemed on the second day of March, A. D. 1866; and whereas said lands were not redeemed at any time prior to the first Monday of June, A. D. 1866, under the provisions of section 156 of the act relating to 'taxes,' approved March 2, 1866, or otherwise, and therefore became and were, and still remain, the absolute property of said state and subject to disposal at public or private sale under the direction of the state auditor; and whereas said auditor of state has determined and directed that said lands, and all lands subject to the provisions of section 156 aforesaid, shall be sold at private sale, for cash, to the person making the highest offer therefor; and whereas G. A. Austin, of the county of Chittenden and state of Vermont, did, on the 17th day of February, A. D. 1868, offer to purchase said lands and pay therefor the sum of one hundred and fifty and 79-100 dollars, which offer was accepted, that being the highest offer for said lands, and said sum was duly paid to the county treasurer of said county of Hennepin, and said G. A. Austin thereupon became the purchaser of said lands and entitled to a conveyance of the same:

"*Now therefore,* I, Anton Grethen, auditor of the county of Hennepin, for and in consideration of the said sum of one hundred and fifty and 79-100 dollars, paid to said county treasurer, and by virtue of the statute in such case provided, do hereby grant, bargain, sell, and convey, unto the said G. A. Austin, his heirs and assigns forever, all those tracts or parcels of land, lying and being in said county of Hennepin and state of Minnesota, described as follows, to wit: Lots

1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11 and 12, in block five [and other property] all in Cobb's addition to St. Anthony.

"To have and to hold the same unto the said G. A. Austin, his heirs and assigns forever.

"In witness whereof, I, Anton Grethen, auditor as aforesaid, by virtue of the authority aforesaid, have hereunto subscribed my name and affixed my seal this 17th day of February, A. D. 1868.

(Auditor's Seal)                  "A. GRETHEN,

                        "Auditor of Hennepin County.

"Signed, sealed and delivered in presence of

     "MARSH P. HAWKINS, } Witnesses".
     "O. B. KING, }

"*Exhibit E.*

"Table Showing Form of Printed Tax List, Tax of 1873.

"'SAINT ANTHONY TOWNSHIP.'

"Then follows descriptions of unplatted lands.

"Then in the next column of the paper as follows:

| "COBB'S ADDITION. | | | | Lot. | Blk. | Amt. |
|---|---|---|---|---|---|---|
| "G. A. Austin | - | - | - | - 1 | 5 | 26 |
| do | - | - | - | 2 | 5 | 25 |
| do | - | - | - | - 3 | 5 | 25 |
| do | - | - | - | 4 | 5 | 27 |
| do | - | - | - | - 5 | 5 | 25 |
| do | - | - | - | 6 | 5 | 25" |

*J. M. Shaw, Spry & Harvey,* and *Howe Paige,* for appellants.

*Forrest & Van Cleve,* for respondent.

MITCHELL, J. This was an action for partition of real property, of which the plaintiff alleges she owns one undivided third, and the defendant the other two-thirds. The answer denies that plaintiff owns any part of the premises, and alleges that defendant owns the whole.

1. The defendant makes the point that the issue of adverse claim of title cannot be tried in an action for partition. The old rule undoubtedly was that the applicant for partition must be actually

or constructively in possession of the premises sought to be divided, and that, if it was held adversely to him, a court of equity would remit him to a court of law to establish his title. Whatever reasons for such a rule there may have been when the distinction between the legal and equitable jurisdictions existed, each exercised by separate tribunals, now that the distinction is abolished, and equitable and legal rights may be enforced, and equitable and legal remedies obtained, in the same action and in the same court, there is no reason, in principle, why the whole matter of title and partition may not be tried, and all the rights of the parties fully determined, in one action. Such a practice is eminently convenient. Independently of any statute affecting the question, the tendency of the courts is to do away with those limitations attending proceedings in partition, and do full justice to the parties in one action. Hence, whenever the question is one of first impression, not controlled by former decisions, the courts are inclined to resolve it in favor of taking jurisdiction, where the plaintiff shows himself seized of the requisite title, whether the lands sought to be partitioned are held or claimed adversely to him or not. Freem. Cotenancy, § 450. Our statute on partition evidently contemplates such a practice. Gen. St. 1878, c. 74. It provides for making parties to the action all persons who have or claim an interest in the property; also that partition shall not be ordered until the title to the property, and the rights of the parties, are established by evidence or stipulated, and that, when this is done, judgment of partition shall be rendered, and the share of each party set off to him according to their respective rights as determined in the action.

2. To prove title in himself to the undivided third claimed by plaintiff, defendant offered in evidence a tax deed (Exhibit B) dated February, 1868, from the county auditor to one Austin, under which defendant claims through mesne conveyances. This deed purported to be made under the provisions of Gen. St. 1866, c. 11, relating to the sale of lands *forfeited to the state,* to which sections 137, 138, 156, and 157 are applicable. This sale purports to have been made particularly under section 156. The deed was excluded by the court, on the ground, among others, that no authority in the auditor

to make the deed had been shown. This is assigned as error; defendant's contention being that the deed itself, which recites such authority from the state auditor, is, by section 138, made *prima facie* evidence of title, without any preliminary proof *aliunde* the instrument. If the question was one of first impression, it might admit of argument whether, under a fair construction of sections 138 and 140, deeds executed under either section 138 or 139, if properly proved, are not *prima facie* evidence of title, without any preliminary proof whatever. But it was held as long ago as *Greve* v. *Coffin*, 14 Minn. 263, (345,) that a deed executed under section 139 is not *prima facie* evidence of title without proof *dehors* the instrument that the land had not been redeemed when the deed was executed. If preliminary proof of this fact is necessary in such a case, it would seem to follow that, in the case of a deed executed under section 138, preliminary proof would be necessary of authority from the state auditor to the county auditor to make the sale; for as, in the first case, it is only where the land is unredeemed that the county auditor is authorized to make a deed, so, in the latter case, it is only when he is directed to sell by the state auditor that he has authority to do so, and then only upon the terms directed. See section 137. That this was the construction put upon the statute by the court is clear from what was said in *Madland* v. *Benland*, 24 Minn. 372, 379. It is there said: "To make a properly framed deed *prima facie* evidence under this (138) section, it is only necessary to show that the sale was directed by the state auditor, as the deed will upon its face show whether the direction was carried out." This construction was assumed in *Kipp* v. *Johnson*, 31 Minn. 360, (17 N. W. Rep. 957,) as correct, and must now be taken as the doctrine of the court.

The defendant then offered to prove by the county auditor the receipt by him from the state auditor of a printed circular of instructions, (Exhibit A,) authorizing and directing him to dispose of these lands "at private sale for cash to such persons as will pay therefor the amount of taxes, interest, and charges due thereon on the first Monday of June, 1866." This the court also excluded. That authority to the county auditor may be proved by such printed circular

v.39m—7

instructions was determined in *Kipp* v. *Johnson, supra.* But the evidence was properly excluded, for the reason that the circular did not tend to prove any authority to make any such sale as is recited in the deed. The authority was to sell to such persons as would pay the amount of taxes, interest, and charges on the land. The deed recites that Austin "offered to purchase said lands, and pay therefor the sum of $150.79, which offer was accepted, being the highest offer for said lands;" but nowhere states, by recital or otherwise, that this was equal to the amount of the taxes, interest, and charges due on the land. Such a deed must bear on its face not only an acknowledgment of the authority in pursuance of which it purports to have been executed, but also recite a compliance with all the requirements of the power. It must disclose the existence of such facts as are essential, under the authority, to give it validity. No fact essential to the validity of the deed which is not embraced in the recitals can be presumed, especially in view of the implication raised by their use that all the facts deemed essential were therein recited. *Cogel* v. *Raph*, 24 Minn. 194; Blackw. Tax Titles, 368. The sale recited in the deed was not such as the auditor was authorized to make.

3. The defendant next attempted to prove title under a sale on a tax judgment rendered September 1, 1874, for the taxes of 1873, and for that purpose introduced in evidence the printed and published list of lands delinquent for taxes of 1873, and notice of application for judgment attached; also the tax judgment, and the certificate of sale under the same. Various objections were made to this evidence, especially that the description of the property, both in the published list and in the judgment, was insufficient; also that the published list did not contain a statement of the amount of taxes against the land. It is possible that, by a very liberal construction and a free indulgence in inferences, the description of the land might be sustained; but the attempted statement of the amount of taxes against it in the published list is, in our judgment, fatally defective. In a column headed merely "Amt." are found two figures, viz., "26," "25," "27," opposite the respective descriptions, without any mark or line or anything to indicate what they were intended to represent,— whether dollars, cents, or something else. Being found under the

heading "Amt.," it might be inferred that these figures had reference to the amount of taxes, and hence to some denomination of money, but that is all. They might mean dollars or cents, or, perhaps, something else. To what extent the statement in the published list of the amount of taxes against a tract of land was, under the tax law of 1874, jurisdictional, and what degree of definiteness or certainty of statement of such amount was required to give the court jurisdiction to enter judgment against the land, was before us in *Collins* v. *Welch*, 38 Minn. 62, (35 N. W. Rep. 566.) In that case we held that the same strictness as to definiteness and certainty in the statement of the amount of taxes was not required in the published list as in the judgment; that the statement in the published list in that case was such that any man of ordinary intelligence would understand what amount was claimed against the land, and therefore it was sufficient. In the case at bar the statement is not sufficient to convey any such information. The most that could possibly be claimed for it is that it would inform parties interested that the amount of taxes was either so many dollars or so many cents, but which would be entirely a matter of conjecture or surmise.

Section 110, chapter 1, Laws 1874, provides that the delinquent list filed with the clerk of the court *shall* contain, among other things, the amount of tax delinquent opposite each description of real estate. It is a copy of this list which the clerk must furnish to the auditor, and which the auditor must publish. The notice attached to the published list requires the owners to answer, setting forth any defence or objection they may have to the taxes against any parcel or tract in the list; and notifies them that, in case of default to do so, judgment will be entered against such tract for the taxes on said list appearing against it. Section 113 provides that, when the last publication shall have been made, the notice shall be deemed to have been served, and the court to have acquired full and complete jurisdiction to enforce, against each piece or parcel of land described in the published list, the taxes upon it then delinquent. It is the settled doctrine of this court that in these proceedings the only jurisdiction which the district court could acquire or exercise is a special and statutory one; and that, if it acquire jurisdiction, it must arise

out of the existence of the particular facts or conditions upon which its exercise is made to depend by the statute which confers it, and therefore that the publication of the list and notice, as required by the statute, is a jurisdictional prerequisite to the entry of any valid judgment. *Eastman* v. *Linn,* 26 Minn. 215, (2 N. W. Rep. 693.) If so, the court cannot acquire jurisdiction by the publication of anything but of the list as filed with the clerk; and this must contain everything of substance which the statute requires, among which is the amount of taxes delinquent against such tract. The statute declares what the contents of the published list shall be; and each fact required by the statute which is of substantial utility to the person against whose property the tax is proposed to be enforced, must appear in the published list, or the publication will be void. Nothing, except the description of the property itself, can be more material, or in which the owner has a greater interest, than in being informed for what amount it is proposed to take judgment against his property. If this can be omitted, it would seem that almost anything else might be. This list and notice is in the nature of a summons, and its publication service thereof on the owners. If this was a summons in a civil action in a court proceeding according to the course of the common law, we hardly see how it would be sufficient to give the court authority to enter judgment for any sum. See *Gundry* v. *Whittlesey,* 19 Wis. 211. Certainly, less definiteness or certainty should not be allowed in these special statutory proceedings. The language of the latter part of section 113 is significant. It provides that the jurisdiction of the court shall not be affected, "except as to the piece or parcel as to which such error may occur, by any mistake in copying the list for publication, nor any mistake in publishing such list, nor by any mistake in the amount of tax in such published list appearing against any piece or parcel of land therein described." The publication of the list being, as to these tracts, fatally defective, in not stating the amount of taxes against them, the court did not acquire jurisdiction to render judgment against them for any amount. Hence the judgment, and the sale under it, were, as to them, utterly void.

Order affirmed.