545 So.2d 279 (1989)
STATE of Florida, Appellant,
v.
Stacy BURCH, Appellee.
STATE of Florida, Appellant,
v.
Kenny Mike BROWN, Appellee.
Nos. 88-0904, 88-0930.
District Court of Appeal of Florida, Fourth District.
February 8, 1989.
*280 Robert A. Butterworth, Atty. Gen., Tallahassee, and John Tiedemann, Asst. Atty. Gen., West Palm Beach, for appellant.
Richard L. Jorandby, Public Defender, and Anthony Calvello, Asst. Public Defender, West Palm Beach, for appellees.
LETTS, Judge.
We are concerned here with two defendants, one charged with selling, and the other with purchasing, cocaine within one thousand feet of a school, contrary to section 893.13(1)(e) Florida Statutes (1987). The trial judge granted a motion to dismiss declaring the legislation to be unconstitutional because "the statute ... as written is vague and overbroad and the application of the statute is an abuse of police power which fails to follow the legislative intent in that the [police] have set up reverse-sting operations with officers posing as drug sellers or buyers ... after school hours and in residential neighborhoods." We conclude that the trial judge was in error and reverse.
The statute in question provides as follows:
(e) Except as authorized by this chapter, it is unlawful for any person to sell, purchase, manufacture, or deliver, or to possess with the intent to sell, purchase, manufacture, or deliver, a controlled substance in, on or within one thousand feet of the real property comprising a public or private elementary, middle, or secondary school. Any person who violates this paragraph with respect to:
1. A controlled substance named or described in section 893.03(1)(a), (1)(b)(1)(d), (2)(a), or (2)(b) is guilty of a felony of the first degree, punishable as provided in section 775.082, section 775.083, or section 775.084.
2. A controlled substance named or described in section 893.03(1)(c), (2)(c), (3), or (4) is guilty of a felony of the second degree, punishable as provided in section 775.082, section 775.083, or section 775.084.
We begin our analysis with a quote from our supreme court's opinion in State v. Kinner, 398 So.2d 1360, 1363 (Fla. 1981), which held there is a "strong presumption in favor of the constitutionality of statutes. It is well established that all doubt will be resolved in favor of the constitutionality of a statute ... and that an act will not be declared unconstitutional unless it is determined to be invalid beyond a reasonable doubt." In our opinion, the statute sub judice is not invalid beyond a reasonable doubt.

*281 THE STATUTE IS NOT FACIALLY VIOLATIVE OF THE DUE PROCESS CLAUSE AS VAGUE AND OVERBROAD
As to this argument, we first dispose of the question of overbreadth holding that it is inapplicable here. The overbreadth doctrine applies only to conduct protected by the first amendment. Southeastern Fisheries Assoc. v. Department of Natural Resources, 453 So.2d 1351 (Fla. 1984). As the state aptly points out in its brief, the defendants "did not and could not reasonably contend that [their] conduct in purchasing [selling] cocaine within one thousand feet of a school was protected by the first amendment." We agree.
Addressing next the question of vagueness, it appears that a vague statute is one that fails to give adequate notice of what conduct is prohibited and which, because of its imprecision, may also invite arbitrary and discriminatory enforcement. Southeastern Fisheries. The defendants suggest that this particular statute is vague because it does not put a person of reasonable intelligence on notice as to how to measure the distance between the location of the drug transaction and the "real property comprising a public or private elementary, middle or secondary school."
This argument was met and disposed of by the Second Circuit in United States v. Agilar, 779 F.2d 123, 126 (2nd Cir.1985), cert. denied, 475 U.S. 1068, 106 S.Ct. 1385, 89 L.Ed.2d 609 (1986):
Appellant's final due process challenge alleges that the one thousand foot demarcation line is not sufficiently ascertainable by the average person. Since the statute is violated whether or not the seller knows he is within the prohibited zone ... this argument has no force. And since there is no protected right to sell narcotics anywhere, there need be no concern for the person who removes his selling activity a considerable distance from a school in order to avoid the risk of being within the one thousand foot zone.
Furthermore, the Second Circuit, in another case, rejected the proposition that the state would have to prove that the defendants knew they were within one thousand feet of a school. United States v. Ofarril, 779 F.2d 791 (2nd Cir.1985), cert. denied, 475 U.S. 1029, 106 S.Ct. 1231, 89 L.Ed.2d 340 (1986). We agree. Statutory sexual battery does not require the state to prove that the defendant knew the age of the minor. Ignorance as to the age of the victim is no excuse. See section 794.02, Florida Statutes (1987). Likewise, we are of the opinion that ignorance of the distance to a schoolyard is no excuse. The instant legislation has as its obvious and laudable purpose the curtailment of drug dealing near schools where children congregate and we see no reason why the one thousand foot distance requirement should not reasonably be measured in a straight line to the school property's nearest boundary line (i.e., as the crow flies). To suggest that the distance should be calculated by some circuitous pedestrian route would be a tortuous reading of the statute that would violate its plain intent and meaning. Ofarril, 779 F.2d at 792.

ENTRAPMENT BY REVERSE STING
The trial judge held that the defendants were entrapped as a matter of law by the conduct of the police in selling/purchasing cocaine within one thousand feet of a school during the evening hours.
Section 777.201, Florida Statute (1987) states:
Entrapment. 
(1) A law enforcement officer, a person engaged in cooperation with a law enforcement officer, or a person acting as an agent of a law enforcement officer perpetrates an entrapment if, for the purpose of obtaining evidence of the commission of a crime, he induces or encourages and, as a direct result, causes another person to engage in conduct constituting such crime by employing methods of persuasion or inducement which create a substantial risk that such crime will be committed by a person other than one who is ready to commit it.
(2) A person prosecuted for a crime shall be acquitted if he proves by a preponderance *282 of the evidence that his criminal conduct occurred as a result of an entrapment. The issue of entrapment shall be tried by the trier of fact.
To demonstrate that no entrapment occurred sub judice, the state relies upon Cruz v. State, 465 So.2d 516, 522 (Fla. 1985), cert. denied, 473 U.S. 905, 105 S.Ct. 3527, 87 L.Ed.2d 652 (1985), wherein the supreme court stated:
[Objective] entrapment has not occurred as a matter of law where police activity (1) has as its end the interruption of a specific ongoing criminal activity; and (2) utilizes means reasonably tailored to apprehend those involved in the ongoing criminal activity.
We are not happy with the knowledge that undercover police have been selling drugs near schools, but we are of the opinion that the instant police conduct passes the first prong of the Cruz test because it was obviously undertaken in response to the untenable high volume of drug trade near the school where the defendants were apprehended. It also passes the second prong because this sting was tailored to apprehend ongoing criminal activity, and is not outrageous as a matter of law. See Sarno v. State, 424 So.2d 829 (Fla. 3d DCA 1982), pet. for rev. den., 434 So.2d 888 (Fla. 1983); Gonzalez v. State, 525 So.2d 1005 (Fla. 3d DCA 1988).
Defendant Burch, who was charged with selling cocaine within the one thousand foot zone, analogizes to Horsemen's Benevolent and Protective Assoc., Florida Division v. Division of Pari-Mutuel Wagering, 397 So.2d 692 (Fla. 1981), where the court found a statute to be an invalid exercise of the police power. That statute required licensed racetracks holding permits for thoroughbred racing to deduct one percent from the total purse pool paid and pay it to the horsemen's association representing a majority of the owners and trainers of thoroughbred horses stabled in Florida. While the objective of the statute (improving the quality of racing which would enhance tourist revenues) was valid, the means selected to achieve it was an invalid exercise of police power in that there was no reasonable relationship between the objective of the statute and the form of the statute, which contained no provision for how funds must be spent or that they must be spent in furtherance of the legitimate state objective. The statute before us now, as defendant Burch sees it, prohibits purchasing drugs near a school even at night when the campus has been closed for hours and the children supposedly have gone home. The same enhanced penalty is applied to adults who "wander" into the protected zone and purchase or sell drugs from other adults as well as school children. If the legislative intent was to create a "drug free zone" around schools, argues Burch, the setting up of reverse-sting operations by the police to lure drug buyers or sellers nearer to schools is in direct contravention of the purported purpose of the law. This argument was addressed in United States v. Agilar, wherein the court stated:
Agilar contends that the statute offends the Due Process Clause by creating an unwarranted irrebuttable presumption that every sale of narcotics within 1,000 feet of a school has the detrimental effects upon school children that Congress sought to avoid by enacting section 845a. The cases condemning irrebuttable presumptions that lack rationality, e.g., Cleveland Board of Education v. La Fleur, 414 U.S. 632, 94 S.Ct. 791, 39 L.Ed.2d 52 (1974); United States Department of Agriculture v. Murray, 413 U.S. 508, 93 S.Ct. 2832, 37 L.Ed.2d 767 (1973), do not require that the means chosen by Congress to deal with a problem score a notable success in every application of the statute. Congress wanted to lessen the risk that drugs would be readily available to school children. It is surely rational to achieve that goal by increasing penalties for those who sell drugs near schools. See United States v. Nieves, 608 F. Supp. 1147 (S.D.N.Y. 1985). Whether or not each sale within the 1,000-foot zone, if not deterred, would have led to acquisition of drugs by school children, the proscription of sales within the environs of schools is a rational means of reducing the risk of easy *283 availability that can lead to such acquisition.
779 F.2d at 125.
Since reverse-sting operations have not been held to be outrageous as a matter of law, see Yolman v. State, 473 So.2d 716 (Fla. 2d DCA 1985), pet. for rev. den., 475 So.2d 696 (Fla. 1985), this statute should not be considered unacceptable because it might lure drug buyers or sellers into the drug free zone. After all, any sting operation "facilitates" a violation of the law. Furthermore, in United States v. Jones, 779 F.2d 121 (2d Cir.1985), cert. denied, 475 U.S. 1031, 106 S.Ct. 1236, 89 L.Ed.2d 344 (1986), the court held that the statute did not require evidence that the specific location of the sale, within the one thousand foot zone, is one where school children are present or likely to congregate. There the sale was to an adult, in the evening and in a bar not frequented by children.

INTENT
The defendants contended below that the statute, on its face, violated their due process rights by not requiring the state to prove a criminal intent to sell within one thousand feet of a school. We disagree.
In United States v. Agilar, the defendant challenged 21 U.S.C.A. § 845a(a) (West Supp. 1985), which increased penalties for distribution of narcotics within one thousand feet of a public or private elementary or secondary school. The court found the statute not infirm on equal protection or due process grounds and cited United States v. Falu, 776 F.2d 46, 50 (2d Cir.1985), which held that the statute did not require knowledge of the proximity of the school:
The purpose of the statute is clear from a reading of the legislative history. Congress sought to create a drug-free zone around schools... . We find that a requirement that the dealer know that a sale is geographically within the prohibited area would undercut this unambiguous legislative design.
See also United States v. Holland, 810 F.2d 1215 (D.C. Cir.1987), cert. denied, 481 U.S. 1057, 107 S.Ct. 2199, 95 L.Ed.2d 854 (1987). Based on Falu, the criminal intent argument is not supportive of the trial court's dismissal.
The defendants also asserted below that the statute violated their constitutional right to equal protection of the law because its "legislative intent is not readily ascertainable." The court in Falu noted that the similar federal statute was designed to "send a signal to drug dealers that we will not tolerate their presence near our schools" and to "`deter drug distribution in and around schools,' including transactions which `take place in remote outdoor areas, at local hangouts, or at nearby homes or apartments,' thereby helping to `eliminate outside negative influences' around schools." Id. at 48, 50. United States v. Jones also states that "the schoolyard statute was introduced to help reduce drug use by children by threatening pushers who approach our children near schools with stiff penalties." Id. at 122.
The defendants contend that the application of the statute in large city areas discriminates against black people who tend to inhabit the inner city core. They assert that the statute denies equal protection because it has a greater impact upon drug purchasers or sellers who reside in inner city areas, where population density and the number of schools are higher, than in the suburbs or rural areas. However, this claim should not be heard since it is not supported by statistical evidence and the defendants did not plead or prove a discriminatory intent on the part of the state. Also, the defendants did not plead or prove that they were personally targeted for arrest and prosecution for racial reasons. A person to whom a statute may constitutionally be applied may not challenge that statute on the grounds that it may conceivably be applied unconstitutionally to others in situations not before the court. New York v. Ferber, 458 U.S. 747, 102 S.Ct. 3348, 73 L.Ed.2d 1113 (1982). This claim was also raised in United States v. Agilar:
Agilar also challenges section 845a on equal protection grounds on the strained *284 theory that the statute has disproportionate impact on members of racial minorities, more of whom live, it is asserted, within 1,000 feet of schools than do nonminority residents, a smaller proportion of whom live in densely populated urban areas. The argument fails, among other reasons, for lack of any claim, much less showing, of a discriminatory purpose. See Washington v. Davis, 426 U.S. 229, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976).
779 F.2d at 126. This argument does not support the trial court's order.

ABUSE OF POLICE POWER
The state asserts the statute does not constitute an unreasonable exercise of the state's "police power" as contended by the defendants and relies upon the District Court's opinion in United States v. Agilar, 612 F. Supp. 889, 890 (S.D.N.Y. 1985), wherein the court referred to the federal statute:
The statute must only satisfy a test of rationality. Only if the statute establishes a presumption that is irrational will it violate due process and be held invalid. See Cleveland Board of Education v. La Fleur, 414 U.S. 632, 94 S.Ct. 791, 39 L.Ed.2d 52 (1974); United States Department of Agriculture v. Murray, 413 U.S. 508, 93 S.Ct. 2832, 37 L.Ed.2d 767 (1973); Stanley v. Illinois, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972). Congress has a legitimate and powerful interest in protecting school children from the detrimental effects of the sale of narcotics and enhance the penalties which are to be imposed upon dealers who distribute narcotics within one thousand feet of a school, presumably on the assumption that a drug dealer who knew that an enhanced penalty would be imposed is less likely to distribute narcotics near a school. By focusing on the single transaction involved in this indictment, and not on the more general presumed prophylactic effect of section 845(a), Agilar has challenged what appears to be a rational exercise of Congress' authority.
The defendants have offered no compelling reason not to accept the above reasoning which we hereby adopt.

CRUEL AND UNUSUAL PUNISHMENT
Although not relied upon by the trial judge in his order, the defendants argued below that the instant statute is in violation of the law proscribing cruel and unusual punishment. Indeed, the public defender labels the prescribed sentence "shocking and outrageous." If convicted the defendants face a possible sanction of up to thirty years in prison, the same maximum sentence provided for in such crimes as robbery with a weapon, manslaughter with a firearm, and attempted first degree murder. This sentence is twice the exposure for manslaughter, sexual battery, burglary, or lewd and lascivious assault upon a child. In Solem v. Helm, 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983), the United States Supreme Court found that a sentence of life without possibility for parole, imposed on a seven-time convicted felon charged with uttering a worthless check, constituted a violation of the eighth amendment and was a punishment disproportionate to the crime charged. The state points out that the court distinguished another case, Rummel v. Estelle, 445 U.S. 263, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980), wherein it had held that a Texas Statute mandating a life sentence with possibility of parole upon a defendant's third adjudication for theft-related offenses did not constitute cruel and unusual punishment. The distinction was that the Solem sentencing scheme had foreclosed the possibility that its defendant could be rewarded if he rehabilitated himself in prison, whereas the Rummel ruling did not. The Florida Statute before us does not foreclose the possibility of rehabilitation and we take judicial notice of the practice of "gain time." The state also finds Solem an anomalous departure from the axiom that whatever views the courts may entertain regarding severity of punishment, punishment is peculiarly a question of legislative policy. Gore v. United States, 357 U.S. 386, 78 S.Ct. 1280, 2 L.Ed.2d 1405 (1958).
We do not think the defendants have shown that a harsh punishment for buying, selling, etc. drugs in a "school zone" violates the eighth amendment of the United *285 States Constitution. It is true that we harbor some reservation as to the propriety of police officers selling drugs within a school zone while operating a reverse-sting. However, the traffic in drugs around schools is what shocks and outrages this court. It must be stopped. If that requires harsh measures, so be it.

SUBJECT MATTER[1]
The relevant section of Article III, Section 6 of the Florida Constitution provides that "every law shall embrace but one subject and matter properly connected therewith." The defendants strenuously contend that Chapter 87-243, Laws of Florida, (1987), the "Crime Prevention and Control Act" which contains section 893.13(1)(e) Florida Statutes (1987), violates that one subject rule.
A bill's subject may be broad if there is a "natural and logical connection" among the matters contained within. State v. Lee, 356 So.2d 276, 282 (Fla. 1978). The defendants cite several examples of matters included within the four corners of a statute which were found to violate the "one subject rule:"
a. Provisions requiring sworn tax return and a provision prohibiting deed recording without the stating of the grantor's address were too independent and unrelated. Colonial Investments Co. v. Nolan, [100 Fla. 1349,] 131 So. 178 (Fla. 1930).
b. Prohibition of the manufacture and trafficking of liquor and a provision criminalizing voluntary intoxication failed the "one subject rule." Albritton v. State, [82 Fla. 20,] 89 So. 360 (Fla. 1921).
c. Creating a new criminal offense and making provision concerning a criminal justice council were separate subjects. Bunnell v. State, 453 So.2d 808 (Fla. 1984); Williams v. State, 459 So.2d 319 (Fla. 5th DCA 1984).
The defendants rely particularly on Bunnell v. State, 453 So.2d 808, 809 (Fla. 1984), wherein the supreme court held:
The subject matter of the act is another matter. We recognize the applicability of the rule that legislative acts are presumed to be constitutional and that courts should resolve every reasonable doubt in favor of constitutionality. Hanson v. State, 56 So.2d 129 (Fla. 1952). Nevertheless, it is our view that the subject of section 1 has no cogent relationship with the subject of sections 2 and 3 and that the object of section 1 is separate and disassociated from the object of sections 2 and 3. State ex rel. Landis v. Thompson, 120 Fla. 860, 163 So. 270 (1935); and Williams v. State, 100 Fla. 1054, 132 So. 186 (1930). We hold that section 1 of 82-150 was enacted in violation of the one-subject provision of article III, section 6, Florida Constitution.
They find Chapter 87-243 similar to the legislation stricken in Bunnell in that 87-243 contains sections which create new crimes, a study commission, the creation of neighborhood improvement districts, and a coordinating council. The defendants contend that the only way these separate matters may be included in one bill is if they all can be considered to relate to a broad general subject area such as "criminal justice" or "crime prevention and control," a notion rejected by the Fifth District in Williams v. State, 459 So.2d 319, 321 (Fla. 5th DCA 1984):
Even if that subject was expressed, for example, in a title reading "Bill to Improve Criminal Justice in Florida," we think this is the object and not the subject of the provisions. Further, approving such a general subject for a non-comprehensive law would write completely out of the constitution the anti-log rolling provision of article III, section 6.
The defendants identify 16 subject matters:
1. Drug Abuse Crimes
2. Education and Drug Abuse
3. Conveyances: forfeiture, title registration
4. Vessel operation crimes
5. Money Laundering Control Act
6. Planting of a "hoax bomb"

*286 7. Pawnbrokers and stolen property
8. Entrapment
9. Attempted burglary
10. Witness tampering
11. Appeal by state
12. Judgment costs at sentencing
13. Bookmaking
14. Operating chop shops
15. Crimes prevention studies, training
16. Safe Neighborhoods Act
Thus, the act includes numerous topics relating to substantive criminal law, appellate procedure, fiscal resources, criminal defenses, educational structure, local neighborhood structuring, etc.
The state, of course, finds all 76 sections of the act naturally and logically connected and notes that the preamble to the chapter sets forth that Florida is facing a crisis because of the rapidly increasing crime rate. However, the state does concede that this legislation would not pass the "single subject" rule under the highly restrictive Bunnell standard. It argues that Bunnell's holding is plainly inconsistent with prior and subsequent Florida Supreme Court decisions which take a broader view. It urges that Bunnell is simply not controlling. Particularly, the state suggests that Bunnell conflicts with Smith v. Dept. of Insurance, 507 So.2d 1080 (Fla. 1987). There, the court held that the Tort Reform and Insurance Act did not violate the single subject requirement. In Smith, the court found that the 70 section act covered five basic areas:
1. Long term insurance reform
2. Tort reform
3. Insurance reform
4. Creation of a task force to study tort reform and insurance law
5. Modification of financial responsibility requirements applicable to physicians
The Smith court also found that the Legislature explained in the preamble of the act how the tort reform and the insurance regulation provisions were connected and stated:
The test to determine whether legislation meets the single subject requirement is based on common sense. It requires examining the act to determine if the provisions "are fairly and naturally germane to the subject of the act, or are such as are necessary incidents to or tend to make effective or promote the objects and purposes of legislation included in the subject." State [ex rel. Flink] v. Canova, 94 So.2d 181, 184 (Fla. 1957) (citation omitted). We reject appellants' contention that by including contract actions where damages are sought, the legislature impermissibly broadened the subject matter and violated the single subject requirement. We interpret this act as applying only to claims for personal injury and property damage, both tort and contract. Many such claims are brought under both a tort theory and a contract theory, e.g., breach of warranty and strict liability, and commercial liability insurance coverage applies to both. Each of the challenged sections is an integral part of the statutory scheme enacted by the legislature to address one primary goal: the availability of affordable liability insurance. We conclude by approving the words of the trial judge that the legislature was attempting to meet "the single goal of creating a stable market for liability insurance in this state."
Id. 507 So.2d at 1087. Earlier, the court explained:
In Chenoweth, [v. Kemp,] appellants contended that chapter 76-260 was unconstitutional because the chapter contained malpractice tort reform and insurance reform in one act. We held that medical malpractice and insurance relate to tort litigation and insurance reform and that they have a natural or logical connection. We reiterated that "the subject of an act may be as broad as the Legislature chooses as long as the matters included in the act have a natural or logical connection." 396 So.2d 1122, at 1124 [(Fla. 1981)] (quoting from Board of Public Instruction of Broward County v. Doran, 224 So.2d 693, 699 (Fla. 1969)).
*287 Id. 507 So.2d at 1085. Smith was decided in 1987, while Bunnell was decided in 1984. In accordance with Smith, and our version of "common sense," referred to in Smith, we find that Chapter 87-243 does not violate the one subject matter rule.
There is another provision in article III, subsection F, which sets forth:
Laws making appropriations for salaries of public officers and other current expenses of the state shall contain provisions on no other subjects.
In Brown v. Firestone, 382 So.2d 654 (Fla. 1980), the court found two principles to apply to this subsection. First, an appropriations bill must not change or amend existing law on subjects other than appropriations; and second, the subsection will countenance a qualification or restriction only if it directly and rationally relates to the purpose of an appropriation and if the qualification or restriction is a major motivating factor behind the enactment of the appropriation. Chapter 87-243 contains section 47(9), which involves the imposition of and collection for investigative costs. Section 66 establishes the safe neighborhood trust fund with various planning grants as technical assistance. The defendants argue that these two provisions are appropriation bills because they change the funding formula as to how monies and expenses, including salaries and current expenses, are being distributed in order to achieve the goals and subject matter of the legislation.
The flaw in this argument is that these two sections are neither "laws making appropriations for salaries of public officers" nor "laws making appropriations for ... other current expenses of the state." Neither section directly appropriates any particular sum but merely allocates anticipated revenues. In Amos v. Moseley, 74 Fla. 555, 77 So. 619 (Fla. 1917), the court found that article III, section 12 pertains only to "general appropriations bills" rather than those bills which merely authorize "incidental" expenditures "necessary" and "proper" to secure their objects.

CONCLUSION
Not all of the matters addressed herein were alluded to in the trial judge's order. However, they were raised at trial and we address them, in part, pursuant to the axiom that a trial judge may be right for the wrong reason, Applegate v. Barnett Bank of Tallahassee, 377 So.2d 1150 (Fla. 1979), notwithstanding our conclusion that he was, in fact, wrong on this occasion. Moreover, we have amassed over one hundred appeals on this general subject upon which innumerable trial judges have ruled diversely. We note also that our supreme court has held it appropriate to expand the horizon of a reviewing court when it is considering the constitutionality of a statute. See Trushin v. State, 425 So.2d 1126 (Fla. 1982).
We are confident that the result we reach here is appropriate and will be upheld. Certainly, this statute cannot be declared invalid beyond a reasonable doubt, as it must, to be unconstitutional. State v. Kinner. If the state can prohibit the otherwise legal sale of intoxicating liquors within twenty five hundred feet of a school, State ex rel. Dixie Inn, Inc. v. City of Miami, 156 Fla. 784, 24 So.2d 705 (1946), then a fortiori, it should have no difficulty in proscribing the criminal sale of illegal drugs within one thousand feet thereof. Nevertheless, many trial judges in our district have disagreed and the public defender has informed us of a multiplicity of appeals statewide, on this same subject. Consequently, deeming the matter to be of great public importance, we certify the following question to the supreme court:

IS SECTION 893.13(1)(e), FLORIDA STATUTES (1987) CONSTITUTIONAL?
REVERSED AND REMANDED.
WALDEN, J., and DAUKSCH, JAMES C., Jr., Associate Judge, concur.
NOTES
[1] We will embark upon this analysis under the authority of Loxahatchee River Environmental Control District v. School Board of Palm Beach County, 515 So.2d 217 (Fla. 1987).