564 So.2d 1208 (1990)
STATE of Florida, Appellant,
v.
Howard REGAN, Appellee.
No. 89-01309.
District Court of Appeal of Florida, Second District.
July 27, 1990.
Robert A. Butterworth, Atty. Gen., Tallahassee, and Robert J. Krauss, Asst. Atty. Gen., Tampa, for appellant.
No appearance by appellee.
LEHAN, Acting Chief Judge.
We affirm the trial court's downward departure from the sentencing guidelines. The trial court imposed two years community control followed by five years probation upon defendant's conviction for the *1209 purchase of cocaine within 1,000 feet of a school. The guidelines recommended 3 1/2 to 4 1/2 years imprisonment.
The trial court's reasons for the downward departure were as follows:
1. This crime occurred on Saturday, October 29, 1988, at approximately 4:08 p.m., in a residential neighborhood well known as a place where drugs are used, bought and sold. The seller was an undercover police officer who is an adult black female. She could not be mistaken for a school child. The officer was deliberately standing at a location within 1,000 feet of a school for the purpose of enhancing the penalty. There is no evidence that the Defendant knew he was within 1,000 feet of a school. The Defendant is an adult male who was alone when he made the purchase and intended the cocaine for his own use. There is no indication he intended to sell or give it to a minor.
The laudable intent of the legislature in passing this law was to severely punish persons who attempt to introduce drugs into the lives of our children. The problem with this case is that there is no nexus between the purchase of the drugs and the school except proximity and that proximity was deliberately created by law enforcement. If the purchase was made 1,0001 [sic] feet from the school the guidelines sentence would be any non-state prison sanction. The Defendant needs to be punished for what he did, no more or less.
2. The Defendant is employed full-time and has held the same job for many years.
3. The Defendant, who is 43 years old, has not been arrested during his adult life.
4. The Defendant is not dangerous and does not constitute a threat to society. To place him in prison would be a waste of valuable prison space which should be used for violent criminals.
The state argues that these reasons reflect no more than the trial court's dissatisfaction with the guidelines recommended range for a crime which defendant clearly committed. Citing Scott v. State, 508 So.2d 335, 337 (Fla. 1987), the state correctly argues that dissatisfaction of that kind would by itself not provide a proper basis for a downward departure. While the trial court's reasons did reflect dissatisfaction with the guidelines recommended range, that dissatisfaction appears to have been attributable not to the existence of that range as such but to the trial court's conclusion that the particular circumstances of the crime in this case ameliorated the level of defendant's guilt and indicated less moral culpability. In that regard the first reason for departure reflects that defendant knew he was not dealing with a school child, had no reason to believe that his crime had anything to do with a school or school activities or personnel, and in fact was not shown to be aware that there was a school in the vicinity. Amelioration of the level of a defendant's guilt or moral culpability may in proper circumstances justify a downward departure. See State v. Sachs, 526 So.2d 48, 50 (Fla. 1988); State v. D'Alexander, 496 So.2d 1007, 1008 (Fla. 2d DCA 1986). See also State v. Herrin, 555 So.2d 1288, 1291-92 (Fla. 2d DCA 1990) (Lehan, A.C.J., concurring specially).
The fourth reason for departure  that defendant did not constitute a threat to society  is closely related to the first reason and is in these circumstances a valid reason for departure. See Sachs; State v. Bingham, 549 So.2d 1173 (Fla. 2d DCA 1989).
The crime for which defendant was convicted having been committed after the enactment of section 921.001(5), Florida Statutes (1987), it is not determinative that others of the trial court's reasons for departure were invalid.
Affirmed.
PATTERSON, J., concurs.
ALTENBERND, J., concurs with opinion.
ALTENBERND, Judge, concurring.
I concur with the court's opinion. This case and other similar cases, however, *1210 should generate a public debate concurring the advisability of undercover police officers conducting drug transactions inside school zones. I discuss the matter in hopes that the people involved in or affected by undercover operations will carefully consider whether these activities are actually protecting our children and fulfilling the mandate of our legislature.
In 1987, the legislature increased the penalty for drug transactions within 1,000 feet of a school. § 893.13(1)(e), Fla. Stat. (1987) (corresponds to ch. 87-243, § 4, Laws of Fla.). In 1989, the legislature amended this statute to mandate a minimum sentence of three years' imprisonment with no eligibility for parole or section 944.275 statutory gain-time. § 893.13(1)(e), Fla. Stat. (1989) (corresponds to ch. 89-524, Laws of Fla.). If the 1989 amendment had been in effect at the time of Mr. Regan's offense, the trial court may not have been able to provide this downward departure, even though the facts of this case warrant the departure.[1]
By these enactments, the legislature clearly intends to create a drug-free zone surrounding the schools where our children congregate. I fully agree with the Fourth District that this legislative goal is a "laudable purpose." State v. Burch, 545 So.2d 279, 281 (Fla. 4th DCA 1989), approved, 558 So.2d 1 (Fla. 1990). Drugs are a multifaceted problem for our children. The problem is more than the temptation to use drugs. The sale of illegal drugs in a neighborhood brings street violence, an increase in the presence and use of concealed handguns and other sophisticated weapons, and a host of related social problems. I believe that our legislators, as well as our teachers, school officials, and the parents of our children, want the drug-free school zone to protect children from all these problems.
The reported appellate cases indicate that the statutorily increased penalty may have induced some police departments to conduct many routine undercover operations inside school zones rather than outside school zones.[2] The 1989 change in sentencing may encourage some police departments to conduct even more undercover operations near our schools. I am concerned that these statutory changes may inadvertently work against the very goals which prompted the legislature to enact the statutes. Instead of creating a drug-free zone, the statutes create an incentive for police departments to conduct undercover drug transactions inside the school zone. Even though the reported cases suggest that the police are conducting these undercover sales during nonschool hours, the transactions are still importing the risks and temptations of drugs into the drug-free zone.[3] Before law enforcement agencies make these sting operations a regular practice, and certainly before they conduct these operations during the school day, they should be certain that our teachers, school officials, and the parents of our children believe that the local drug problem warrants the use of these potentially harmful tactics.
The trial bench has demonstrated an understandable hesitancy to enforce the increased penalty for drugs sold to adults by the police during nonschool hours at locations *1211 on the edge of the 1,000-foot limit.[4] Despite the absence of any strong connection between the goals of the enhancement statute and such offenses, these nighttime adult drug transactions technically fall within the ambit of the statutory enhancement. Thus, the judiciary has been confronted with a reoccurring set of circumstances under which some trial judges presumably have followed the letter of the law and enhanced the sentence, while others have followed the spirit of the law and granted downward departures which effectively override the enhancement statute. This has not fulfilled the purpose of uniform guidelines sentences. Fla.R.Crim.P. 3.701(b). The new minimum mandatory sentence may restore uniformity, but it will do so at a great price in cases in which the defendants' actions appear to have no real intention or risk of harming our children.
Our children deserve the best protection which the police and the prosecutors can provide. Hopefully, the state is not using the enhancement statute merely to impose longer sentences by placing our children at risk. Hopefully, the state is carefully employing this statute only to create the drug-free zone which our school children deserve. From my admittedly nonscientific observations, I am concerned that the legislature's laudable goal is becoming secondary to other less praiseworthy goals.
NOTES
[1] As a citizen, I am concerned that this new minimum mandatory sentence for occasional drug users may further add to prison overcrowding and to conditions requiring early release of dangerous inmates serving sentences for more violent crimes. The wisdom of this punishment, however, is largely in the hands of the legislature.
[2] The facts and the sentence in this case are virtually identical to those in State v. Bingham, 549 So.2d 1173 (Fla. 2d DCA 1989). In State v. Burch, 545 So.2d 279 (Fla. 4th DCA 1989), approved, 558 So.2d 1 (Fla. 1990), the Fourth District politely observed that: "We are not happy with the knowledge that undercover police have been selling drugs near schools... ." Id. at 282. Other cases also seem to involve undercover activities near schools. See, e.g., State v. Williams, 549 So.2d 230 (Fla. 3d DCA 1989).
[3] There are situations in which an undercover operation may be very appropriate. Where there is a high volume of drug trade near a school or where the police suspect an individual is engaging in drug activity within a school zone, a well-planned undercover operation may be the most effective way to identify and cure the problem. See Burch, 545 So.2d at 282.
[4] See State v. Herrin, 555 So.2d 1288 (Fla. 2d DCA 1990), jurisdiction accepted, 560 So.2d 233 (Fla. 1990); Bingham; State v. Allen, 553 So.2d 176 (Fla. 4th DCA 1989); State v. Rumph, 551 So.2d 1275 (Fla. 4th DCA 1989); State v. Williams, 549 So.2d 230 (Fla. 3d DCA 1989).